A09A2259. RASNICK et al. v. KRISHNA HOSPITALITY, INC.
(690 SE2d 670)

PHIPPS, Judge.

Sidney Rasnick died while a registered guest at Motel Jesup. As his surviving spouse and administratrix of his estate, Virginia Rasnick (Rasnick) filed a wrongful death action against the entity that owned and operated the motel, Krishna Hospitality, Inc. Krishna was granted summary judgment, and Rasnick appeals. We affirm because Rasnick has failed to show any legal duty that Krishna allegedly breached in connection with the death of her husband.

To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the nonmovant's favor, warrant judgment as a matter of law.[1] We review de novo a trial court's grant of summary judgment, construing the evidence in a light most favorable to the nonmoving party.[2]

Rasnick and her 77-year-old husband lived in Texas. Having taken a job in Georgia, Sidney Rasnick checked into the motel on March 6, 2006, and for several days thereafter reported to work when scheduled and spoke with his wife several times each day. On the morning of March 13, however, a housekeeper for the motel opened the door to Sidney Rasnick's room and found him lying on the floor between the two beds. Although he told her he could get up, he was unable to do so. Shortly thereafter, at about 12:30 p.m., Sidney Rasnick was transported by a summoned ambulance to a nearby hospital. He died there a short time later. An autopsy revealed that Sidney Rasnick died from untreated coronary artery disease, coupled with an enlargement of his heart. One cardiologist opined to a reasonable degree of medical certainty that, had Sidney Rasnick received medical treatment on the evening of March 12, he would have survived his health crises.

In her complaint, Rasnick set forth the following allegations in connection with her negligence theory. She had made numerous

---

[1] OCGA § 9-11-56 (c); *Latson v. Boaz,* 278 Ga. 113 (598 SE2d 485) (2004).
[2] *Latson,* supra.

telephone calls to the motel the night before her husband died, and when she was unable to reach him, she alerted the motel operators of the possibility that her husband was in need of medical aid. The motel operators, however, refused to comply with her requests to check on him. According to Rasnick, Krishna's personnel's failure to heed her expressed concern amounted to a breach of duty to render aid to a paying guest.

Krishna moved for summary judgment, arguing, inter alia, that Georgia law imposed no duty on it to investigate Sidney Rasnick's condition and render or summon medical aid, if needed. Krishna cited the general rule that a person has no duty to rescue another from a dangerous situation that the first person has not created. It asserted that Sidney Rasnick's perilous situation was created by his own health, medical, and physical condition. And because it had not placed Sidney Rasnick in his incapacitated condition, it argued that it had no legal duty to rescue him from that condition.

Rasnick posited, however, that Krishna and Sidney Rasnick had a "special relationship," that of innkeeper and guest. And given such, she argued, Krishna had breached the duty contemplated by Section 314A of the Restatement (Second) of Torts: "(1) A common carrier is under a duty to its passengers to take reasonable action . . . to give them first aid after it knows *or has reason to know* that they are ill or injured, and to care for them until they can be cared for by others. (2) *An innkeeper is under a similar duty to his guests.*"[3]

Krishna countered that such section had not been adopted by Georgia with respect to innkeepers. Moreover, Krishna argued that, even if the court determined that the case was governed by that principle, Rasnick could not prevail. Krishna asserted that the evidence, construed in Rasnick's favor, established that it neither knew nor had reason to know that Sidney Rasnick was both in his room and ill to the extent that he was in need of emergency medical intervention. More specifically, Krishna claimed, the evidence cited by Rasnick as showing that it had the requisite knowledge — the telephone calls she made to the motel the evening before her husband died — had not put anyone at the motel on notice of Sidney Rasnick's alleged medical crisis.

Rasnick detailed these calls in her deposition. At 6:51 p.m. and again at 7:36 p.m.,[4] she called the motel; each time a female motel operator connected her call to her husband's room, but there was no answer. At 7:55 p.m., she called and a man answered the motel's telephone. Rasnick identified herself by name, told him that she was

---

[3] (Emphasis supplied.)
[4] All times herein reflect that of Eastern Standard Time.

in Texas, that she was "very worried about [her] husband," that he was on medication, and that she needed somebody to check on him. The man told her that he knew who she was, that her husband was resting, and that she was disturbing him. Rasnick refuted his claim that she was disturbing her husband, but the man hung up. At 8:16 p.m., having waited a period she believed was long enough for the man to have checked on her husband, Rasnick called the motel again. This time, a woman answered; Rasnick did not ask the woman to check on her husband, and the woman simply complied with Rasnick's request to transfer the call to Sidney Rasnick's room. There was no answer. When Rasnick called again at 8:30 p.m., a man answered. Rasnick identified herself by name, and believing that the man had complied with her request to check on her husband, she asked, "Did you find out about my husband?" The man "went off," ranting: "Maybe your husband is working over. . . . They work over. . . . You disturb your husband. . . . He's resting. . . . You let your husband rest. . . . He's gone out. . . ." Rasnick insisted that she was not disturbing her husband and that she had already called her husband's office and had been told that he had left for the motel. The man told Rasnick to "dial 111," which was Sidney Rasnick's room number,[5] then hung up. Rasnick recounted that she placed five more calls to the motel that evening, from 7:58 p.m. to 10:44 p.m. No person answered those calls; instead, a recorded message advised that the party was unavailable.

Rasnick conceded that no motel operator ever told her that he or she would check on her husband. Nevertheless, Rasnick deposed, "I figured that's where he was staying, they could at least do that."

1. Rasnick argues that the trial court erred in determining that Krishna had no legal duty to comply with her requests.

> To state a cause of action for negligence in Georgia, the following elements are essential: (1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected

---

[5] Rasnick described that the motel's telephone system greeted callers with a recorded message, which explained among its options: (a) how to reach an operator who could then transfer the call to a requested motel room; and (b) how to independently transfer the call to a motel room by using the phone to dial the particular room number. Concerning the evening in question, Rasnick explained that "why I was talking to an operator is because I didn't remember the room number Syd said [he] was in at that time."

interest as a result of the alleged breach of the legal duty.[6]

Before negligence can be predicated upon a given act or omission,

> some duty to the individual complaining must be sought and found, the observance of which duty would have averted or avoided the injury or damage. No matter how innocent the plaintiff may be, [s]he is not entitled to recover unless the defendant did something that it should not have done, or failed to do something that it should have done pursuant to the duty owed the plaintiff.[7]

A legal duty sufficient to support liability in negligence is "either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common law principle declared in the reported decisions of our appellate courts."[8] Whether a legal duty exists is a question of law for the court.[9]

Rasnick's lawsuit is cast in terms of Krishna's failure to act, i.e., nonfeasance, thus requiring Rasnick to demonstrate that Krishna had a legal obligation to act.[10] However, the Supreme Court of Georgia recently reiterated the long-established general rule: "A person is under no duty to rescue another from a situation of peril which the former has not caused."[11] Rasnick neither alleges nor cites evidence that Krishna created her husband's alleged underlying medical condition.

---

[6] *Bradley Center, Inc. v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982) (citation and punctuation omitted).

[7] *City of Douglasville v. Queen*, 270 Ga. 770, 771 (1) (514 SE2d 195) (1999) (citations and punctuation omitted). Accord *Young v. Wal-Mart Stores*, 209 Ga. App. 199, 201 (433 SE2d 121) (1993) (regardless of the capacity of the injured person, if there is no breach of any legal duty on the part of the defendant toward such person, there can be no legal liability), cited in *City of Douglasville*, supra.

[8] *First. Fed. Savings Bank &c. v. Fretthold*, 195 Ga. App. 482, 484 (394 SE2d 128) (1990) (citation and punctuation omitted).

[9] Id. at 485.

[10] See generally *City of Douglasville*, supra at 772 (2).

[11] Id. at 773 (3) (citation and punctuation omitted); see *Alexander v. Harnick*, 142 Ga. App. 816, 817 (3) (237 SE2d 221) (1977) (recognizing the general principle that a person is under no duty to rescue another from a situation of peril which the former has not caused); *Thomas v. Williams*, 105 Ga. App. 321, 326 (3) (124 SE2d 409) (1962) (recognizing general rule that a person has no legal duty to assist another human being who is in danger); *Handiboe v. McCarthy*, 114 Ga. App. 541, 543 (4) (151 SE2d 905) (1966) ("As a general rule, where the injury is not due to the fault of the person sought to be charged, the fact that a person sees another who is injured does not, of itself, impose on him any legal obligation to afford relief or assistance, but he may have a strong moral and humanitarian obligation to do so.") (citation and punctuation omitted) (physical precedent only). See generally *Allen v. Hixon*, 111 Ga. 460, 463-464 (2) (36 SE 810) (1900) (where one has not caused another's peril, the only duty arising is one of humanity, and for a breach thereof, the law imposes no liability).

Instead, Rasnick requests this court to carve an exception to that rule by recognizing the existence of a "special relationship" between her husband and Krishna from which arose a duty for the entity to have investigated her husband's medical condition and then to have rendered first aid and/or summoned assistance, as contemplated by Section 314A in connection with innkeepers. Indeed, it has been recognized that "when some special relation[ship] exists between the parties, social policy may justify the imposition of a duty to assist or rescue one in peril."[12]

But as Krishna has correctly argued, the cited provision of the Restatement concerning innkeepers has not been adopted into Georgia's common law. Moreover, the principle therein is inconsistent with the long-established general rule as recognized by our Supreme Court; the principle amounts to a departure from the firmly-rooted general rule so as to create a new basis of liability for innkeepers. We decline to impose upon innkeepers a new, judicially-created duty, as urged by Rasnick.[13] The cases cited by Rasnick in support of her assertion that the duty set forth in § 314A has been "widely recognized" are unavailing.[14]

We note Rasnick's claim that Krishna had "reasonable information suggesting the guest may need medical assistance." But even if so,[15] that circumstance does not provide for this court to expand traditional tort concepts. Not only are we bound by the general rule as discussed, but in several decisions, our Supreme Court has

---

[12] *Thomas*, supra (citation omitted) (noting that Georgia law recognizes a special relationship between an officer and prisoner in his custody); see *Alexander*, supra (where defendant's own negligence has been responsible for the plaintiff's situation, a relation has arisen which imposes a duty to make a reasonable effort to give assistance and avoid any further harm).

[13] See *Blotner v. Doreika*, 285 Ga. 481, 483-484 (1) (678 SE2d 80) (2009) (opinion of Court of Appeals impermissibly imposed upon chiropractors a new, judicially-created duty of disclosure that was beyond scope of appellate court's authority, where such opinion failed to employ a Supreme Court holding, which was predicated on well-established appellate case law); *Albany Urology Clinic v. Cleveland*, 272 Ga. 296, 299 (1) (528 SE2d 777) (2000) (determining that Court of Appeals had impermissibly expanded upon statutory disclosures required of health care providers and imposed upon health care providers a new, judicially-created duty of disclosure, and finding that such action was beyond scope of Court of Appeals' authority); *Bruscato v. Gwinnett-Rockdale-Newton Community Svc. Bd.*, 290 Ga. App. 638, 642-643 (1) (660 SE2d 440) (2008) (declining to "take a step" so as to extend the duties imposed by tort law, where plaintiffs failed to point to any "special relationship" that would give rise to a duty to aid or protect). Compare *Bradley Center, Inc.*, supra at 201-202 (concluding that Court of Appeals properly imposed duty, which was set forth in Restatement, Torts, 2d, § 315, noting that such a duty did not "create[ ] a new tort," but applied traditional tort principles of negligence to facts of the case) (punctuation omitted).

[14] Rasnick cites *Gingeleskie v. Westin Hotel Co.*, 145 F3d 1337 (9th Cir. 1998) (unpublished opinion); *Sneider v. Hyatt Corp.*, 390 FSupp. 976 (N.D. Ga. 1975), and *Hovermale v. Berkeley Springs Moose Lodge No. 1483*, 271 SE2d 335 (W. Va. 1980).

[15] Krishna maintains that Rasnick's telephone calls did not show that it knew or should have known that Sidney Rasnick was in his motel room and in need of medical intervention.

rejected the argument that "mere foreseeability" served as a basis to extend common law tort duty.[16] Expounding on the issue of extending common law tort duty, the Court has noted:

> [I]n fixing the bounds of duty, not only logic and science, but policy play an important role. . . . [I]t must also be recognized that there is a responsibility to consider the larger social consequences of the notion of duty and to correspondingly tailor that notion so that the illegal consequences of wrongs are limited to a controllable degree.[17]

While the common law rule at issue here has been tempered in some states,[18] determining whether and the extent to which Georgia may do so by expanding tort liability for its innkeepers as urged by Rasnick is beyond this court's authority.

Indeed, we discern no legislative intent for innkeepers to be subject to liability under the circumstances here. Notably, the General Assembly has demonstrated its willingness to codify certain duties of owners and occupiers of land,[19] and it has enacted legislation providing for what is commonly known as a Good Samaritan *defense*.[20] But Rasnick has cited no statutory provision that can be construed so as to impose a legal duty upon the motel entity here. And we have found none.

As noted during oral argument for this case, there may well have been a moral duty for Krishna to respond to Rasnick's requests to investigate her husband's whereabouts, examine his medical condi-

---

[16] *CSX Transp. v. Williams*, 278 Ga. 888, 890 (608 SE2d 208) (2005), citing *City of Douglasville*, supra at 773 (3) (holding that foreseeability of parade attendees walking on railroad tracks adjacent to the parade route did not extend a municipality's duty to exercise ordinary care for their protection to a duty to protect them from being hit by a train and citing proposition that a person is under no duty to rescue another from a situation of peril which the former has not caused), and *Badische Corp. v. Caylor*, 257 Ga. 131, 133 (356 SE2d 198) (1987) (where foreseeability of third parties relying on financial statements was held not sufficient to extend to those third parties the duty of care owed to the client by the accountant who prepared the statements); see *Murray v. Ga. Dept. of Transp.*, 284 Ga. App. 263, 272 (4) (644 SE2d 290) (2007) (holding that even if it was foreseeable to defendant that acting more quickly might have avoided the injury, such circumstance did not impose a legal duty on defendant to act sooner, noting that defendant had done nothing to create alleged unsafe condition, and citing proposition that a person is under no duty to rescue another from a situation of peril which the former has not caused) (physical precedent only).

[17] *CSX Transp.*, supra (citation and punctuation omitted).

[18] See generally *Stockberger v. United States of America*, 332 F3d 479, 480-481 (7th Cir. 2003) (noting that the common law traditionally took a hard line — rejecting any legal duty to be a Good Samaritan, that various rationales have been offered for the "seemingly hardhearted common law rule," and that the common law rule has been changed in some states).

[19] See, e.g., OCGA § 51-3-1 (Georgia's premises liability statute, setting forth duty of a land owner or occupier regarding "keeping the premises and approaches safe").

[20] See generally *Gilley v. Hudson*, 283 Ga. App. 878, 879-880 (1) (642 SE2d 898) (2007) (citing OCGA § 51-1-29).

tion, and provide first aid or summon medical care to him, if needed. But given the absence of any signal from the Supreme Court or from the General Assembly that, with respect to innkeepers, it is time for Georgia to retreat from its long held, common law general rule of no-duty, we adhere thereto and conclude as a matter of law that Krishna had no duty to comply with Rasnick's requests to attempt a rescue of her husband from his medical peril. Accordingly, the trial court committed no error in granting summary judgment to Krishna on Rasnick's negligence claim.

2. Our decision in Division 1 renders moot Rasnick's remaining claims of error.

*Judgment affirmed. Smith, P. J., and Bernes, J., concur.*

DECIDED FEBRUARY 10, 2010 — ▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆

*James M. Poe*, for appellants.

*Carlock, Copeland & Stair, David F. Root, Hugh M. Ruppersburg*, for appellee.