S10G0971. RASNICK et al. v. KRISHNA HOSPITALITY, INC.

(713 SE2d 835)

HINES, Justice.

This Court granted certiorari to the Court of Appeals in *Rasnick v. Krishna Hospitality, Inc.*, 302 Ga. App. 260 (690 SE2d 670) (2010), to consider whether the Court of Appeals erred in concluding as a matter of law that the defendant motel had no duty to comply with the plaintiff's requests to attempt a rescue of her husband from his medical peril. Finding no error in the judgment of the Court of Appeals, we affirm.

The facts as stated by the Court of Appeals included the following. Virginia Rasnick ("Rasnick") and her 77-year-old husband, Sidney Rasnick, lived in Texas. While on a work assignment in Georgia, Mr. Rasnick stayed at the Motel Jesup, which was owned and operated by Krishna Hospitality, Inc. ("Krishna"). He checked into the motel on March 6, 2006, and for a number of days thereafter reported to work and spoke with his wife several times a day. On the morning of March 13, a motel housekeeper found Mr. Rasnick lying on the floor of his motel room, unable to get up. The housekeeper informed the owner, who called 911. At about 12:30 p.m., an ambulance transported Mr. Rasnick to a nearby hospital, where he died a short time later. An autopsy revealed that he died from a combination of untreated coronary artery disease and enlargement of his heart. A cardiologist opined to a reasonable degree of medical certainty that Mr. Rasnick would have survived had he received medical treatment on the evening of March 12.

Rasnick filed the present wrongful death action against Krishna, alleging, inter alia, negligence in that Rasnick had made numerous telephone calls to the motel the night before her husband died, and when she was unable to reach him, she alerted the motel operators of the possibility that her husband was in need of medical aid. However, the motel operators refused to comply with her requests to check on him. Rasnick maintained that the failure of Krishna's personnel to heed her expressed concern amounted to a breach of

duty to render aid to a paying guest.[1]

Krishna moved for summary judgment, arguing, inter alia, that Georgia law did not impose a duty on it to investigate Mr. Rasnick's condition and render or summon medical aid, if needed. The trial court granted Krishna's motion for summary judgment, determining that Krishna had no legal duty to comply with Rasnick's requests to check on her husband, and thus, there was no legal duty sufficient to support liability in negligence. The Court of Appeals affirmed, holding as a matter of law that Krishna had no duty to comply with Rasnick's requests to attempt the possibly-needed rescue of her husband. *Rasnick v. Krishna Hospitality*, supra at 266 (1).

In order to have a viable negligence action, a plaintiff must satisfy the elements of the tort, namely, the existence of a duty on the part of the defendant, a breach of that duty, causation of the alleged injury, and damages resulting from the alleged breach of the duty. *John Crane, Inc. v. Jones*, 278 Ga. 747, 751 (604 SE2d 822) (2004). The legal duty is the obligation to conform to a standard of conduct under the law for the protection of others against unreasonable risks of harm. *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982). This legal obligation to the complaining party must be found, the observance of which would have averted or avoided the injury or damage; the innocence of the plaintiff is immaterial to the existence of the legal duty on the part of the defendant in that the plaintiff will not be entitled to recover unless the defendant did something that it should not have done, i.e., an action, or failed to do something that it should have done, i.e., an omission, pursuant to the duty owed the plaintiff under the law. *City of Douglasville v. Queen*, 270 Ga. 770 (1) (514 SE2d 195) (1999). The duty can arise either from a valid legislative enactment, that is, by statute, or be imposed by a common

---

[1] The Court of Appeals detailed, from Rasnick's deposition testimony, the following telephone calls Rasnick made to the motel the night of March 12. Unable to reach her husband, she alerted the motel that she believed he might be in need of medical aid. The motel operators, however, refused her requests to check on him. Twice – at 6:51 p.m. and at 7:36 p.m. – she called the motel and a female operator connected her to her husband's room, where there was no answer. At 7:55 p.m. she called the motel again, identifying herself and telling the operator that her husband was on medication, that she was very worried about him, and that she needed someone to check on him. The operator told her that he knew who she was, that her husband was resting, and that she was disturbing him, and hung up. Rasnick waited for a period of time that she hoped was long enough for the man to check on her husband and then she called again at 8:16 p.m. This time a female operator answered, and Rasnick asked the operator to connect her to her husband's room; the operator did so, and there was no answer. Rasnick called the motel again at 8:30 p.m. and asked the male operator, "Did you find out about my husband?" The man became irate, ranted and told Rasnick to dial her husband's room number, and then hung up. Rasnick called the motel five more times from 7:58 p.m. to 10:44 p.m., but no one answered her calls. Instead, there was a recorded message advising that the party was unavailable. Rasnick conceded that no motel operator ever told her that he or she would check on her husband.

law principle recognized in the caselaw. *Murray v. Ga. Dept. of Transp.*, 284 Ga. App. 263, 272 (4) (644 SE2d 290) (2007). In order to proceed on a tort claim based upon a failure to render aid, the plaintiff, as a threshold matter, must demonstrate that the defendant had a legal duty to render aid; even the actor's realization that some action on his or her part is necessary for another's aid or protection does not, in and of itself, impose upon the actor the duty to undertake such action. *Cowart v. Widener*, 287 Ga. 622, 631, n. 2 (697 SE2d 779) (2010). The existence of a legal duty is a question of law for the court. *City of Rome v. Jordan*, 263 Ga. 26, 27 (1) (426 SE2d 861) (1993).

1. The gravamen of Rasnick's claim of negligence is Krishna's failure to act in response to her requests to check on her husband; thus, Rasnick has to show that Krishna had a legal obligation, i.e., a duty, to do so. But, this she cannot do. The Court of Appeals correctly cited the general principle that, "a person is under no duty to rescue another from a situation of peril which the former has not caused." *City of Douglasville v. Queen*, supra at 773 (3). And, it noted that there is no evidence that Krishna caused Mr. Rasnick's alleged underlying medical problems. Yet, Rasnick argues that there is the duty to investigate when it reasonably appears that a guest may be in need of assistance, that to summon aid is part of the basic duty of an innkeeper to protect guests from danger, and that this is not a new duty, but one with long support in the law. She cites *Hillinghorst v. Heart of Atlanta Motel, Inc.*, 104 Ga. App. 731 (122 SE2d 751) (1961) and *Newtown v. Candace, Inc.*, 94 Ga. App. 385 (94 SE2d 739) (1956); however, these cases do not provide support for Rasnick's contention. They involve the well-settled principle that innkeepers have the duty to exercise ordinary care to provide their guests with premises that are reasonably safe for the guests' use and occupancy. See OCGA § 51-3-1.[2] Yet, Rasnick urges that inasmuch as danger for a motel guest can be external, like menace from criminal elements as in *Newtown v. Candace*, or internal, like smoke in the facility, such internal danger would include the occasion in which a guest becomes debilitated by a medical condition; thus, she maintains that the obligation at issue here is simply an application of the existing duty to ensure reasonably safe premises.

But, contrary to Rasnick's argument, the alleged negligence in her suit cannot be credibly cast as a condition of the premises or akin

---

[2] OCGA § 51-3-1 provides:
Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

to a premises hazard like a smoke-filled building. Because any risk or problem stemming from a medical condition unrelated to and not caused by the guest's stay at the facility is not internal *to the premises* but rather *internal to the guest.*

2. Rasnick next requests that this Court explicitly adopt Section 314A of the Restatement (Second) of Torts (1965), which is entitled "Special Relations Giving Rise to Duty to Aid or Protect," and provides:

> (1) A common carrier is under a duty to its passengers to take reasonable action
>
> (a) to protect them from unreasonable risk of physical harm, and
>
> (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.
>
> (2) *An innkeeper is under a similar duty to his guests.*
>
> (3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.
>
> (4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

(Emphasis supplied.)

In support of engrafting Section 314A into Georgia law, Rasnick cites caselaw in other states which have considered the duty set out in the Restatement provision. But, the cited cases are distinguishable from the circumstances in this case. They involve situations in which the owner or operator of the premises had knowledge that its invitee was in imminent danger because of observation of the physical peril; no manner of investigation or inquiry was at issue. See, e.g., *Baker v. Fenneman & Brown Properties*, 793 NE2d 1203 (Ind. Ct. App. 2003) (restaurant had a duty to provide reasonable assistance to customer who while paying cashier fell to floor, lost consciousness and began having convulsions); *Southland Corp. v. Griffith*, 633 A2d 84 (Md. 1993) (store owner had legal duty to call police when off-duty police officer was injured during assault in store parking lot); *Drew v. LeJay's Sportsmen's Café, Inc.*, 806 P2d 301 (Wyo. 1991) (restaurant owner had duty to patron to summon medical assistance within reasonable time when patron choked on food and was in imminent need of medical assistance); *Miller v. McDonalds Corp.*, 439 So2d 561 (La. Ct. App. 1983) (customer in hamburger restaurant involved in

argument with manager over alleged shortchanging shot by another customer; business owner has duty to exercise reasonable care to protect those who enter business); *Starling v. Fisherman's Pier, Inc.,* 401 So2d 1136 (Fla. Dist. Ct. App. 1981) (drunken, passed out customer was left alone lying on a commercial pier in early hours of the morning close to the ocean and in imminent danger of rolling over unrestrained into water with full knowledge of operator's employee and customer drowned; owner or operator of premises had duty to take at least minimal steps to safeguard inert figure); *Hovermale v. Berkeley Springs Moose Lodge No. 1483,* 271 SE2d 335 (W.Va. 1980) (action by widow against fraternal organization for wrongful death of member, who died of heart attack after being placed by fellow members in his automobile in parking lot; organization's duty to render aid to ill or injured person).

The rights, duties, and liabilities of innkeepers are set forth in Article 1 of Chapter 21 of Title 43. See OCGA § 43-21-1 et seq. These statutes do not impose upon innkeepers the duty to rescue and do not expand an innkeeper's duty of care for the personal safety of its guests beyond that required in our State's caselaw. The General Assembly could have given innkeepers the duty to "investigate" or "check on" a guest, but it chose not to do so. And sound arguments can be made for that choice.

To require that an innkeeper monitor in any manner the possible health problems of a guest, which are not caused by or are unrelated to the stay at the facility, is not only unwarranted as a matter of law but unworkable as a matter of fact and practicality. Pretermitting significant policy considerations including the potential fiscal impact on the hotel/motel industry, threshold issues would include questions involving the scope of the duty and possible triggering events. What type of inquiry would or should cause the innkeeper to inquire into the guest's state of health and from whom? Would the triggering inquiry have to be from a family member or would a friend or colleague or anyone with ostensible concern about the guest's health situation suffice? Such questions become crucial because issues implicating the guest's privacy are extant.

The Court of Appeals noted Rasnick's claim that Krishna had "reasonable information suggesting the guest may need medical assistance," thereby raising the matter of foreseeability, but it accurately concluded that such circumstance does not mandate the expansion of traditional tort concepts. See *CSX Transp. v. Williams,* 278 Ga. 888, 890 (608 SE2d 208) (2005); *Badische Corp. v. Caylor,* 257 Ga. 131, 133 (356 SE2d 198) (1987); *Murray v. Ga. Dept. of Transp.,* supra at 272 (4). This is so because the notion of legal duty must be tailored so that the "consequences of wrongs are limited to a controllable degree." *CSX Transp. v. Williams,* supra at 890. While

issues of morality and humanity are certainly raised by the circumstances of this case, a moral or humane obligation does not compel the existence of a legal duty, the breach of which portends liability. See *Lucas v. Cranshaw*, 289 Ga. App. 510, 514, n. 14 (659 SE2d 612) (2008); *McGarrah v. Posig*, 280 Ga. App. 808, 810 (635 SE2d 219) (2006). To conclude otherwise in this case would be an epitomization of the adage "bad facts make bad law." In light of a legislative reluctance to do so and in recognition of clear considerations of policy and pragmatism, we decline to judicially engraft into the caselaw of this State, the additional duty upon innkeepers to investigate or check on their guests to determine if they are in medical need, as urged by Rasnick. This holding is sufficient to decide this case, and thus, we need not determine now whether any duty to render or summon medical aid as may be set forth in Section 314A (2) should be adopted in Georgia.

The judgment of the Court of Appeals stands.

*Judgment affirmed. All the Justices concur, except Hunstein, C. J., Carley, P. J., and Benham, J., who dissent.*

CARLEY, Presiding Justice, dissenting.

The duties of innkeepers are hardly limited to their duties with respect to their guests' property pursuant to OCGA § 43-21-1 et seq. or to their statutory duty to keep the premises and approaches reasonably safe for their guests. See OCGA § 51-3-1; *Motel Properties v. Miller*, 263 Ga. 484, 485 (1) (436 SE2d 196) (1993). "It is the duty of an innkeeper not only to furnish his guest or patron with shelter and comforts but also to exercise ordinary care to protect him from danger. [Cit.]" *Newton v. Candace, Inc.*, 94 Ga. App. 385 (2) (94 SE2d 739) (1956). This common-law duty is widely recognized in other jurisdictions. 1 J.D. Lee & Barry Lindahl, *Modern Tort Law: Liability and Litigation* § 3:22 (2d ed.); 43A CJS *Inns, Hotels, and Eating Places* § 32; 40A AmJur2d *Hotels, Motels, and Restaurants* § 69; *Estate of Hutchins v. Motel 6 Operating L.P.*, 2006 WL 2365590, at *2 (E.D. Ark. August 14, 2006) (applying Arkansas law, quoting *Catlett v. Stewart*, 804 SW2d 699, 702 (Ark. 1991)).

Moreover, Georgia allows further development of the common law, as we recognize in Supreme Court Rule 34 (3). Thus, this Court has previously adopted portions of the Second Restatement of Torts. *BDO Seidman v. Mindis Acquisition Corp.*, 276 Ga. 311 (1) (578 SE2d 400) (2003); *Huggins v. Aetna Cas. & Sur. Co.*, 245 Ga. 248 (264 SE2d 191) (1980). "A majority of jurisdictions have adopted the standard set forth in the Restatement (Second) of Torts § 314A. Many of these jurisdictions have applied Section 314A to cases related to illness or injury. [Cits.]" *Hoff v. Elkhorn Bar*, 613

FSupp.2d 1146, 1157 (IV) (B) (D.N.D. 2009). Under that section, an "innkeeper is under a . . . duty to his guests" "(a) to protect them against unreasonable risk of physical harm, and (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others." Restatement, supra. Therefore, "in certain circumstances the relationship between a guest and an innkeeper may give rise to a duty to render aid in case of illness or injury. [Cit.]" *Fish v. Paul*, 574 A2d 1365, 1366 (Me. 1990). See also 43A CJS, supra. Contrary to the conclusion of the majority, § 314A is not limited to "situations in which the owner or operator of the premises had knowledge that its invitee was in imminent danger because of observation of the physical peril . . . ." (Majority opinion, p. 568.) Instead, § 314A applies when the innkeeper either "knows or has reason to know" that his guest is ill or injured.

In *Estate of Hutchins*, the evidence on motion for summary judgment showed that the deceased's girlfriend was going to meet him at a hotel late one evening but could not reach him on the phone. She opened his room door only partially because of a security latch, saw him passed out drunk, but breathing normally, and she eventually fell asleep in her car. When she awoke, she returned to the room door, where he was in the same position and did not respond. She asked the desk clerk to call 911 because something was wrong. She told the clerk that she could not get into the deceased's room or get him to answer the telephone, but she did not tell any motel employee how long the deceased had been lying in the same position or provide any other information from which the clerk could reasonably conclude that the deceased was in a medical emergency. Thus, the defendant motel contended that nothing in the record established that it was on notice that the deceased was in immediate danger and that time was of the essence. Nevertheless, because the clerk called the manager first, who did not arrive for at least 30 minutes and did not call 911 until he had opened the room door, the federal district court found "genuine issues of material fact as to whether the Motel 6 employee acted in a negligent manner. The evidence raises a jury question as to how a reasonably careful person would act under the circumstances." *Estate of Hutchins v. Motel 6 Operating L.P.*, supra at *3.

The record here presents a significantly more compelling case for the denial of summary judgment. In her deposition, Ms. Rasnick testified that her 77-year-old husband had recently recovered from prostate cancer, was suffering from a bad cold when he came to Georgia, was on medication for high blood pressure, and was taking a cough suppressant containing codeine. Ms. Rasnick and her husband established a regular pattern of telephone calls. He would

call her during the day from work, and she would call his motel room soon after the work day had ended. On the day of Mr. Rasnick's death, Ms. Rasnick called the motel at 6:51 p.m. and 7:36 p.m. and asked to be connected with his room, but he did not answer. At 7:55 p.m., she called the plant where Mr. Rasnick worked and was informed that he had left two hours earlier. She tried the motel again immediately and informed the man who answered that she lived in Texas, that she was very worried about her husband, that he was on medication, and that she needed someone to check on him. The operator told her that she was disturbing her husband and hung up on her. At 8:16 p.m., Ms. Rasnick called again, and a female operator told her that the manager would be back shortly and connected her to Mr. Rasnick's room, where there was still no answer. When Ms. Rasnick called at 8:30 p.m., she asked the male operator if he had found out about her husband. The operator ranted that her husband may be working overtime or resting and that she was disturbing Mr. Rasnick. She told the operator that she had checked with his office and he was not working overtime. Furthermore, knowing that he did not drive at night, she denied that he had gone out. The operator told her to dial the room number and hung up on her again. Ms. Rasnick made five more calls to the motel that evening, each time receiving only an automated response from the motel switchboard.

The question of a violation of the duty to protect guests from danger, like an innkeeper's other duties, " " " " "is a question of negligence and this court is bound by the rule that such matters are for the jury except in plain, palpable and indisputable cases. (Cit.)" " " " *Robinson v. Western Intl. Hotels Co.*, 170 Ga. App. 812, 813 (1) (318 SE2d 235) (1984). See also *Colt Indus. Operating Corp. v. Coleman*, 246 Ga. 559, 561 (272 SE2d 251) (1980); 40A AmJur2d, supra at § 119 ("Unless evidence allows only a single conclusion, [cit.] it is for the jury to determine whether . . . the proprietor of a hotel . . . has exercised ordinary or reasonable care for the protection of guests . . . . [Cits.]"). This is "[o]ne of the most frequently cited propositions in all of Georgia jurisprudence . . . ." Charles R. Adams III, *Ga. Law of Torts* § 3-2 (2010-2011 ed.). The evidence in this case shows that the defendant motel was placed on notice of Mr. Rasnick's medication, his likely presence in the hotel room due to his earlier departure from work, his failure to respond to phone calls, and his wife's great concern. Under this evidence, a jury could find that the motel had reason to know that Mr. Rasnick was ill or injured, thereby triggering its duty to protect him from further danger. In my opinion, therefore, the trial court erroneously granted summary judgment, since there are genuine issues of material fact as to whether the motel exercised reasonable care under the circumstances. *Estate of Hutchins v. Motel 6 Operating L.P.*, supra. Accordingly, I respectfully

dissent to the affirmance of the Court of Appeals' judgment. I further urge the General Assembly to close the gap in the common law resulting from the majority opinion's unnecessary limitation on the duties of an innkeeper and its inexplicable rejection of the application of § 314A to this case.

I am authorized to state that Chief Justice Hunstein and Justice Benham join in this dissent.

DECIDED JULY 5, 2011 —
RECONSIDERATION DENIED JULY 21, 2011.

*James M. Poe*, for appellants.
*Carlock, Copeland & Stair, Hugh M. Ruppersburg, David F. Root*, for appellee.