[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11896

Non-Argument Calendar

_____

MICHAEL B. BROWN,

Plaintiff-Appellant,

MICHAEL B. BROWN,
Executor of the Estate of Clara Virginia Britton,
deceased
CLARA VIRGINIA BRITTON,

Plaintiff,

*versus*

COLUMBUS POLICE DEPARTMENT, et al.,

Defendants,

OFFICER ROBERT HOOKS,
OFFICER KERTAVIOUS COPPINS,
OFFICER AARON GUILLAUME,
OFFICER SETH COLE,
KIMBERLEY MYHAND,
CPD compliance department, et al.,

                                                  Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 4:21-cv-00162-CDL

_____

Before WILSON, LUCK, AND ANDERSON, Circuit Judges.

PER CURIAM:

Michael Brown, *pro se*, sued dozens of defendants,[1] alleging depravations of rights regarding his hospital treatment following

---

[1] The district court categorized the defendants into the following groups, which we also use:

The "Columbus Defendants"—Columbus Consolidated Government ("CCG"), Columbus Fire Department, Columbus Police Department, Officers Rachel Blanks, Seth Cole, Kertavious Coppins, Aaron Guillaume, and Robert Hooks, and Kimberly Myhand.

a bicycle accident, and a subsequent welfare check performed on his mother, Clara Virginia Britton, during Brown's hospitalization, her unwilling transportation to the hospital, and her allegedly sub-standard medical treatment, which he alleges all led to her death. He appeals the district court's partial dismissal, partial grant of judgment on the pleadings, and partial grant of summary judgment against him. Brown's claims were brought under 42 U.S.C. § 1983; the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320d, *et seq.*; and Georgia law. Some of the defendant-appellees argue that the district court lacked supplemental jurisdiction to hear Brown's claims against them. We first address the jurisdictional issue, and then Brown's several arguments on appeal.

## I. Subject Matter Jurisdiction

---

The "Piedmont Hospital Defendants"—The Medical Center at Piedmont Hospital; Doctors Sara Adams, Richard Hanney, and Meagan Mahoney; and Nurses Emily Blasingame, Jessica Carden, Charisse Seals, and Devyn Sizemore.

The "Medical Providers"—Regional Rehabilitation Hospital; Doctors Addo Chidi, Neil Desai, Shivam Desai, Benjamin Knepper, Sunil Kumar, Virendra Kumar, Charisse Logronio, and Kennon McLendon; and P.A. Kelly Watson.

The "EMS Defendants"—EMS Care, Marc Dade, Isaac Waters, and Tanya Hardy.

The other defendants were Host Medical & Transport, LLC ("HM&T"); Lock Busters Inc, d/b/a/ Pop-A-Lock; and an unidentified "Dr. Evans," who was never served.

We review a district court's subject-matter jurisdiction *de novo*. *Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*, 701 F.3d 669, 679 (11th Cir. 2012). Lack of federal jurisdiction cannot be waived, and an appellate court must satisfy itself that the district court had jurisdiction over a case under review before assessing its merits. *Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1264 (11th Cir. 2021)

A district court has "the power to exercise supplemental jurisdiction over all claims that arise out of a common nucleus of operative fact with a substantial federal claim." *Upper Chattahoochee*, 701 F.3d at 678; 28 U.S.C. § 1367.

Here, the district court did not err in assuming supplemental jurisdiction under 28 U.S.C. § 1367 over Brown's medical-malpractice claims against the Medical Providers. Contrary to the Medical Providers' suggestion, Brown's substantial federal claims predominantly revolve around Britton's removal from her home following a welfare check. His state-law claims against the Medical Providers turn on allegations that they committed malpractice in treating Britton following that removal and his theory that her death was caused by the removal and treatment. The medical-malpractice claims therefore arose from "a common nucleus of operative fact with a substantial federal claim," and the district court had supplemental jurisdiction. *See Upper Chattahoochee*, 701 F.3d at 678; 28 U.S.C. § 1367.

Accordingly, the district court had subject-matter jurisdiction to consider Brown's claims against the Medical Providers, and we can review the merits of those claims.

## II.  Pre-death Injuries to Britton

We review a dismissal for failure to state a claim *de novo*, applying the same standard as the district court.  *Holzman v. Malcolm S. Gerald & Assocs.*, 920 F.3d 1264, 1268 (11th Cir. 2019).  Under Georgia law, pre-death tort injuries "survive to the personal representative of the deceased plaintiff."  O.C.G.A. § 9-2-41.  Surviving children may bring an action for the wrongful death of their parent.  *Id.* § 51-4-2.

Here, the district court correctly dismissed Brown's claims relating to Britton's pre-death injuries because he is not the proper party to bring such claims.  The record makes clear that Brown is not the personal representative of Britton's estate, so he cannot state a claim under Georgia law for her pre-death injuries.  *See* O.C.G.A. § 9-2-41.

Accordingly, we affirm as to this issue.

## III.  Claims Against the Piedmont Hospital Defendants

To state a claim, a complaint must contain facts that, if accepted as true, state a plausible claim to relief.  *Holzman*, 920 F.3d at 1268.; *see* Fed. R. Civ. P. 8(a).  All factual allegations—as opposed to legal conclusions—must be taken as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A party alleging fraud must "must state with particularity

6                    Opinion of the Court                    23-11896

the circumstances constituting" the fraud.  Fed. R. Civ. P. 9(b). *Pro se* pleadings are liberally construed.  *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008).

Under Georgia law, liability for medical malpractice requires proof of: "(1) the duty inherent in the doctor-patient relationship; (2) the breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure be the proximate cause of the injury sustained."  *Zwiren v. Thompson*, 276 Ga. 498, 499 (Ga. 2003).

Under Georgia law, ordinary negligence requires (1) a legal duty to conform to a standard of conduct; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage as a result of the alleged breach of the legal duty.  *See Rasnick v. Krishna Hospitality, Inc.*, 289 Ga. 565, 566 (Ga. 2011).

Here, the district court did not err in dismissing Brown's claims against the Hospital Defendants.  Regarding the Hospital, Brown did not allege specific facts showing that the Hospital had breached a duty inherent in the doctor-patient relationship or that such a breach had caused an injury to him.  *See* Fed. R. Civ. P. 8(a); *Zwiren*, 276 Ga. at 499.  His legal conclusion that the Hospital had committed malpractice was insufficient to state a claim.  *See Iqbal*, 556 U.S. at 679.

Regarding Dr. Adams, Brown alleged that she prescribed him an enema, and her name appears on a report stating that he was treated at 5:30 a.m. on October 15, 2020.  While this report

does conflict with other reports stating that Brown was admitted at approximately 9:00 a.m., neither that conflict nor the allegation that Dr. Adams prescribed an enema alleges facts sufficient to allege a claim for medical malpractice or ordinary negligence. *See* Fed. R. Civ. P. 8(a); *Zwiren*, 276 Ga. at 499; *Rasnick*, 289 Ga. at 566.

Regarding Dr. Mahoney, Brown alleged that she noted which ambulance took him to the hospital and possibly consulted on his injuries and treatment. Neither these allegations nor speculation that she gave other orders which have been withheld from Brown allege facts sufficient to allege a claim for medical malpractice or ordinary negligence. *See* Fed. R. Civ. P. 8(a); 276 Ga. at 499; *Rasnick*, 289 Ga. at 566.

To the extent that Brown attempted to state a claim for fraud, he has not stated with particularity the circumstances constituting the fraud. *See* Fed. R. Civ. P. 9(b).

Accordingly, we affirm as to this issue.

## IV. HIPPA Claims

The Health Insurance Portability and Accountability Act generally provides for the confidentiality of medical records and governs the use and disclosure of protected health information by covered entities that have access to that information and that conduct certain electronic healthcare transactions. *See* 45 C.F.R. § 164.502. It provides both civil and criminal penalties for improper disclosures of medical information and limits enforcement of the statute to the Secretary of Health and Human Services. 42 U.S.C.

§§ 1320d–5(a)(1), 1320d–6 (criminal enforcement).  HIPAA contains no express provision creating a private cause of action. *See generally* § 1320d-5.  "[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

Here, the district court correctly dismissed Brown's HIPAA claims.  HIPAA is to be enforced by the Secretary of Health and Human Services, and Congress has not created a private right of action to enforce it.  *See* 42 U.S.C. 1320d-5(a)(1); *Alexander*, 532 U.S. at 286.  Brown cannot bring a private suit to enforce HIPAA against the EMS Defendants and HM&T and so failed to state a claim. *See* Fed. R. Civ. P. 8(a).

Accordingly, we affirm as to this issue.

### V.  Fraud Claims Against EMS Defendants

Under Georgia law, fraud requires the misrepresentation of a material fact that is acted on by the opposite party.  *See* O.C.G.A. § 23-2-52.

Here, the district court did not err in dismissing the claims against the EMS Defendants.  Regarding Marc Dade, Brown alleged that he signed an EMS report which implicitly misidentified an EMS unit.  Brown did not allege that any misrepresentation was material or that he acted upon it, meaning that he did not adequately state a claim for fraud.  *See* O.C.G.A. § 23-2-52.  Similarly, Brown has not alleged that EMS Care itself misrepresented a material fact that he relied on.

23-11896                Opinion of the Court                9

Regarding Isaac Waters, Brown alleged that he drove the ambulance that took Britton to the hospital, and that Britton told Brown that Waters beat her. The fact that Waters drove an ambulance does not state a claim against him, and to the extent that Brown is attempting to bring a claim against Waters based on Britton's pre-death injuries, as discussed above, Brown is not the proper party to do so as he is not the personal representative of Britton's estate. *See* O.C.G.A. § 9-2-41.

Accordingly, we affirm as to this issue.

## VI. Theft Claims

Here, the district court did not err in dismissing Brown's theft claims against Nurses Jessica Carden and Devyn Sizemore. Carden is not identified by name outside the caption of any of Brown's complaints. Even construing a reference in a hospital report to a "Nurse Jessica" as describing Jessica Carden, Brown alleged no facts to support his allegation that Carden stole his keys. *See Iqbal*, 556 U.S. at 679. Similarly, while Brown alleged that Sizemore possessed his keys while he was in the hospital, he did not allege facts supporting an allegation that Sizemore still possesses them or gave them to someone else. The district court therefore did not err in finding that Brown failed to state a claim against Carden and Sizemore. *See Holzman*, 920 F.3d at 1268.

Accordingly, we affirm as to this issue.

## VII. Medical-Malpractice Claims

Under Georgia law, a medical-malpractice plaintiff must demonstrate by expert testimony a violation of the standard of care and that the violation was the proximate cause of the injury. *Porter v. Guill*, 298 Ga. App. 782, 789 (Ga. Ct. App. 2009).

Here, the district court did not err in dismissing Brown's medical-malpractice claims. Regarding Dr. Hannay, Brown only alleged that he injected Brown with "a serum," without alleging what the serum was. Regarding Dr. Neil Desai and Dr. Shivam Desai, Brown alleged that a Dr. Desai asked him to permit Britton to stay another day in the hospital. Regarding Dr. Knepper, Brown alleged that he had a duty to inform Britton about certain diagnoses and failed to do so. Regarding Dr. Virendra Kumar, he appears in some medical records, as do the other doctors, but it is not clear which actions Brown believes to be reflective of malpractice. Regarding Dr. McLendon, it is alleged that he performed a suture and he appears in medical records. Regarding Dr. Logronio, it is alleged that she ordered a syphilis screening and proscribed a drug. Regarding Dr. Chidi, a "Dr. R. Addo" is mentioned in medical records. Regarding Dr. Sunil Kumar, he is only mentioned in complaint captions.

Brown has not alleged specific facts showing that any of the doctors breached a duty inherent in the doctor-patient relationship or introduced medical evidence showing that any breach had caused an injury. *See* Fed. R. Civ. P. 8(a); *Zwiren*, 276 Ga. at 499; *Porter*, 298 Ga. App. at 789.

Accordingly, we affirm as to this issue.

### VIII.  Claims Against CCG

Section 1983 establishes civil liability for a person who violates constitutional rights under color of law.  42 U.S.C. § 1983.  A § 1983 "person" includes local governments and municipalities. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 663 (1978).  However, a municipality is only liable for its policies and customs, not through a *respondeat superior* theory based on its employment of a tortfeasor.  *Id.* at 690-91.  A plaintiff must "identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).  CCG is a county for the purposes of tort liability.  *Tillis ex. rel. Wuenschel v. Brown*, 12 F.4th 1291, 1295 (11th Cir. 2021).

"Sheriff's departments and police departments are not usually considered legal entities subject to suit."  *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992).  A suit against a government officer in their official capacity is treated as a suit against the employing government entity.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

Here, Brown has not alleged that CCG had a policy or custom leading to any alleged violation of rights.  The district court therefore correctly dismissed Brown's § 1983 claims against CCG. *See Monell*, 436 U.S. at 663; *Tillis*, 12 F.4th at 1295.  Because official capacity suits against the officers are treated as suits against CCG, the district court also correctly dismissed those claims.  *See Graham*,

473 U.S. at 165-66.  The district court also correctly dismissed the claims against CCG's fire and police departments, which are not separate legal entities subject to suit.  *See Dean*, 951 F.2d at 1213.

Accordingly, we affirm as to this issue.

## IX.  Qualified Immunity for the Officers (Columbus Defendants) Named as Defendants in their Individual Capacities in Brown's § 1983 Unconstitutional Search Claims

We review a district court's grant or denial of qualified immunity *de novo*.  *Hardigree v. Lofton*, 992 F.3d 1216, 1223 (11th Cir. 2021).  A district court's grant of summary judgment is also reviewed *de novo*.  *Id.*

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  All submitted evidence is viewed in the light most favorable to the nonmovant and all justifiable inferences are drawn in its favor.  *Hardigree,* 992 F.3d at 1223.  The party moving for summary judgment has the initial burden of demonstrating through evidence that there is no genuine issue of material fact.  *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012).  The nonmovant must then rebut the movant with evidence of a genuine dispute.  *Id.*  If the nonmovant presents evidence that is merely colorable or not "significantly probative of a disputed fact," the movant is entitled to summary judgment.  *Id*; *see also Chavez v. Sec'y, Fla. Dep't of Corrs.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("district court judges are not required to ferret out delectable facts buried in a massive record").

When a government official is sued in their individual capacity in a § 1983 suit, they may seek summary judgment on qualified immunity grounds. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir. 2004). To be eligible for protection under qualified immunity, the official must first demonstrate that they were engaged in a discretionary function when they performed the act in question. *Id.* at 1264. If so, the burden then shifts to the plaintiff to demonstrate that the official is not entitled to qualified immunity. *Id.* To overcome qualified immunity, the plaintiff must demonstrate that (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged violation. *Id.*

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. A warrantless search is presumptively unreasonable. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). However, a warrant is not required if exigent circumstances make the search objectively reasonable. *Id.*; *see id.* at 404 ("The officer's subjective motivation is irrelevant."). Protecting a person who needs immediate aid is an exigency, such as a person who needs medical treatment that they are unable to provide for themselves. *Id.* at 403; *Michigan v. Fisher*, 558 U.S. 45, 47 (2009). The person's refusal of the medical aid does not make the entry into the home retrospectively unreasonable. *See Fisher*, 558 U.S. at 46 ("[Police officers] saw that Fisher had a cut on his hand, and they asked him whether he needed medical attention. Fisher ignored these questions and demanded, with accompanying profanity, that the officers go to get a search warrant.").

Here, the district court did not err in granting summary judgment to the officers on Brown's § 1983 unconstitutional search claims due to qualified immunity. *See Hardigree*, 922 F.3d at 1223. The officers were acting in a discretionary function by responding to a welfare check. They had objectively reasonable belief that Britton was in need of immediate aid, *see Brigham City*, 547 U.S. at 403, as they believed that she had been home alone for at least a week, because Brown was in the hospital and they had been told that Brown had described Britton as elderly, bed-ridden, and unable to care for herself. Brown has not shown through evidence that there is a material issue of fact that the officers lacked an objective reason to believe that Britton required immediate medical attention. *See Jones*, 683 F.3d at 1291-92. That Britton refused the officer's assistance does not make the search unreasonable. *See Fisher*, 558 U.S. at 46.

Accordingly, we affirm as to this issue.

## X. Brown's Related State Law Claims Against CCG Employees

"Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure." *Cameron v. Lang*, 274 Ga. 122, 123 (Ga. 2001). The plaintiff must show through evidence that the officer acted with malice or intent to injure. *See id.* at 125. An officer is entitled to immunity even for negligent performance of a discretionary act. *Id.* Examples of discretionary acts include responding to an emergency call and executing a warrant. *Id.*

23-11896                 Opinion of the Court                 15

Here, the CCG employees are entitled to immunity on state law claims against them.  *See id.* at 344.  Brown has not shown evidence that Officers Hooks, Blanks, or Cole—who were acting discretionarily in responding to the welfare check—acted with malice or an intent to injure when responding to the welfare check and he has not shown evidence that Officers Guillaume and Coppins took any actions at all besides being associated with a "man on [the] ground" police report.  While it is not clear which of Kimberly Myhand's actions Brown thinks establish liability, he has not shown any evidence that she acted with malice, with intent to injure, or even negligently.  *See Cameron*, 274 Ga. at 123-125.  All of Brown's state law claims against the Columbus Defendants in their individual capacities are therefore barred by official immunity.  *See id.*

Accordingly, we affirm as to this issue.

## XI.  Shotgun Pleading

We review a district court's dismissal of a complaint as a shotgun pleading for abuse of discretion.  *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021).  A complaint is a shotgun pleading if it contains pervasive conclusory and immaterial facts not obviously connected to a specific claim or asserts multiple claims without specifying who is responsible or which persons the claim is brought against.  *Id.* at 1324-25.  A shotgun pleading makes it virtually impossible to know which allegations of fact are intended to support which claims for relief.  *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018).  As a result, the pleading

16                      Opinion of the Court                    23-11896

violates the requirement that a plaintiff provide a short and plain statement of their claim. *Id.*; Fed. R. Civ. P. 8(a)(2).

Before dismissing the action, a district court should provide a plaintiff an opportunity to amend a shotgun complaint. *Jackson*, 898 F.3d at 1357-58. If a plaintiff files an amended complaint without substantially fixing the deficiencies in the original complaint, dismissal with prejudice is warranted. *Id.* at 1358-59. *Pro se* litigants are given more leeway than parties represented by counsel but must still follow shotgun-pleading rules and must give the defendant adequate notice of the claims against it and the grounds on which the claims rest. *Pinson v. JPMorgan Chase Bank, N.A.*, 942 F.3d 1200, 1208 (11th Cir. 2019).

Here, the district court did not abuse its discretion in dismissing Brown's consolidated complaints[2] as shotgun pleadings. *See Barmapov*, 986 F.3d at 1324. Regarding the consolidated complaint brought in federal court, it did not state which causes of action were being brought against each defendant or explain how the described facts established liability against the defendants. Regarding the complaint removed from state court, it listed a series of statutes and provisions under which the suit was brought, described the parties, then provided a page of facts, and attached exhibits in support. The complaints violated the requirements that alleged facts be clearly associated with a specific cause of action and make clear which claim is brought against which defendant, and thus

---

[2] The several suits filed by Brown against these Defendants were all consolidated.

were therefore impermissible shotgun pleadings. *See Barmapov*, 986 F.3d at 1324-25; *Jackson*, 898 F.3d at 1356.

The district court allowed Brown to amend his complaint and did not dismiss the case with prejudice until after he had been informed of the deficiencies of his complaint and had unsuccessfully amended it. *See Jackson*, 898 F.3d at 1357-58. Even *pro se*, Brown was obliged to give the Defendants adequate notice of his claims. *See Pinson*, 942 F.3d at 1208. Because Brown did not provide a short and plain statement of his claim, even after being given adequate opportunity to amend, the district court did not abuse its discretion by dismissing the case with prejudice. *See Barmapov*, 986 F.3d at 1324; *Jackson*, 898 F.3d at 1356-58.[3]

For the foregoing reasons, the judgment of the district court is

**AFFIRMED**

---

[3] This had the effect of dismissing any remaining claims except those against the officers (Columbus Defendants) named as defendants in Brown's § 1983 unconstitutional search claims, and related state law claims, which were dismissed at the later summary judgment stage. These claims are addressed above in Part IX and X of this opinion.