[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12256

_____

D.C. Docket No. 9:18-cv-80390-WPD


BENNY BARMAPOV,

                                                            Plaintiff-Appellant,

versus

GUY AMUIAL,
YOSSI AMUIAL,
AVRHAM AMUIAL,
REUBEN SASTIEL,
SAM MOSHE, et al.,

                                                            Defendants-Appellees.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 3, 2021)

Before WILLIAM PRYOR, Chief Judge, TJOFLAT and HULL, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether the district court abused its discretion when it dismissed Benny Barmapov's second amended complaint with prejudice because it was a shotgun pleading. The district court dismissed the first amended complaint for the same reason, but it gave Barmapov another chance to file a proper pleading. Unfortunately for Barmapov, his second amended complaint was no better than his first. The district court described it as "a rambling, dizzying array of nearly incomprehensible pleading." After reviewing it, we agree. Because Barmapov, who was represented by counsel throughout the proceedings, repeatedly failed to file a proper pleading, we conclude that the district court did not abuse its discretion by dismissing his complaint with prejudice, and we affirm.

## I. BACKGROUND

Barmapov filed his initial complaint in the district court in March 2018, and he filed an amended complaint five months later. The amended complaint was 116 pages and 624 numbered paragraphs long, and it included 20 causes of action, under both federal and state law, against 23 named defendants and 20 John Doe defendants. The district court dismissed it because it was "in an improper shotgun format." Barmapov had "lumped together" many of his allegations against the 23 named defendants, rendering his complaint "unclear and confusing as to which [d]efendant [was] being charged with which conduct." The district court also described the complaint as "devoid of specific allegations" such that it was not

2

clear what each defendant "specifically did to be liable as to each stated count." Finally, the court criticized the complaint for incorporating about 350 paragraphs into each of the 20 counts, even though the "paragraphs [were] not all properly directed at the [d]efendants subject to [each] count, nor [were] they pertinent to each claim." The court granted Barmapov leave to file a second amended complaint.

In his second amended complaint, Barmapov reduced the number of named defendants to 16 and the length of the complaint to 92 pages and 440 numbered paragraphs. He also removed all federal causes of action. The 19 counts against the defendants included allegations of fraud, breach of fiduciary duty, and civil conspiracy—all presumably under Florida law.

The district court concluded that Barmapov's second amended complaint "still fail[ed] to provide a short and plain statement justifying relief and . . . allegations that [were] simple, concise, and direct." Nine of Barmapov's counts "incorporate[d] by reference all of the allegations contained in Paragraphs 21– 269." Many of these allegations, the district court said, were "irrelevant to the instant litigation" and "serve[d] to confuse the issues." Barmapov exacerbated the problem by "continu[ing] to impermissibly lump [d]efendants together . . . , rendering it unclear and confusing as to which [d]efendant [was] being charged with which specific conduct." Because Barmapov had not followed "specific

3

instructions and warnings from the [c]ourt regarding how to formulate a proper pleading," the district court dismissed his complaint with prejudice.

## II. STANDARD OF REVIEW

When a district court dismisses a complaint because it is a shotgun pleading, we review that decision for abuse of discretion. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018).

## III. DISCUSSION

A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Rule 8(a)(2) requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "If doing so would promote clarity," Rule 10(b) also mandates that "each claim founded on a separate transaction or occurrence . . . be stated in a separate count . . . ." *Id.* The "self-evident" purpose of these rules is "to require the pleader to present his claims discretely and succinctly, so that[] his adversary can discern what he is claiming and frame a responsive pleading." *Weiland*, 792 F.3d at 1320 (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J.,

4

dissenting)). These rules were also written for the benefit of the court, which must be able to determine "which facts support which claims," "whether the plaintiff has stated any claims upon which relief can be granted," and whether evidence introduced at trial is relevant. *Id.* (quoting *T.D.S.*, 760 F.2d at 1544 n.14 (Tjoflat, J., dissenting)).

Shotgun pleadings "are flatly forbidden by the spirit, if not the letter, of these rules" because they are "calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked." *Id.* (alterations adopted) (quoting *T.D.S.*, 760 F.2d at 1544 n.14 (Tjoflat, J., dissenting)). Besides violating the rules, shotgun pleadings also "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Vibe Micro*, 878 F.3d at 1295 (alterations adopted) (internal quotation marks omitted). We have "little tolerance" for them. *Id.*

"[W]e have identified four rough types or categories of shotgun pleadings." *Weiland*, 792 F.3d at 1321. The first is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* The second is a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any

5

particular cause of action." *Id.* at 1322. The third is a complaint that does not separate "each cause of action or claim for relief" into a different count. *Id.* at 1323. And the final type of shotgun pleading is a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.*

Barmapov's second amended complaint does not fall into the first category because although nine of the 19 counts incorporate almost every factual allegation in the complaint, none of them adopts the allegations in the preceding counts. It also does not fall into the third category because each count presents a unique cause of action. Nor does it fall into the fourth category because even though several of the counts target multiple defendants, these counts "specify[] which of the defendants are responsible for which acts or omissions." *Id.*

But the second amended complaint undoubtedly falls into the second category of shotgun pleadings. It is rife with immaterial factual allegations, including five pages and 24 paragraphs of irrelevant details about the alleged criminal backgrounds of some of the defendants. To make matters worse, the complaint then incorporates these paragraphs into 13 of the 19 counts, including counts against defendants who had no part in this background history. Other examples of inconsequential details include Barmapov's business background; the

6

relationships among Yossi, Guy, and Avrham Amuial, Terry Rafih, and John Obeid; Barmapov's history with Reuben Sastiel; the experiences of Barmapov's grandson working for the Amuials; and the contentious business meetings between Barmapov, the Amuials, and Sastiel. In addition, the second amended complaint indiscriminately incorporates and repeats 249 numbered paragraphs of factual allegations—spanning 50 pages—into nine of the 19 counts, without any effort to connect or separate which of those 249 factual allegations relate to a particular count. As a result, these nine counts include factual allegations that are immaterial to the underlying causes of action. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997) (describing a complaint in which four counts incorporated all 43 numbered paragraphs of factual allegations, many of which appeared to relate to only one or two counts, as "an all-too-typical shotgun pleading"); *see also Weiland*, 792 F.3d at 1322 n.12 (identifying *Chudasama* as an example of one of the second category of shotgun pleadings).

If these problems were not enough to make Barmapov's second amended complaint a shotgun pleading, the complaint also includes numerous vague and conclusory allegations. It alleges that Yossi Amuial "sabotage[d]" Barmapov's efforts to apply for financing, but it provides no explanation as to how this sabotage occurred. It also briefly states that four of the defendants "worked together to forge Barmapov's signature" on important paperwork. Later, it states

that six of the defendants "worked in concert to forge Barmapov's signature" on documents related to a financing agreement and that one of these defendants then fraudulently notarized Barmapov's signature. But the complaint never explains how these alleged forgeries relate to any of the 19 causes of action. Finally, at the end of his narrative account, Barmapov asserts that "Yossi, Guy, Avrham and Reuben . . . expelled him as a member" of the joint venture because he refused to contribute more money. But he offers no explanation as to how he could have been expelled when, by his own account, there was only one other member of the joint venture.

Because Barmapov's second amended complaint is "replete with conclusory, vague, and immaterial" allegations, a defendant who reads the complaint would be hard-pressed to understand "the grounds upon which each claim [against him] rests." *Weiland*, 792 F.3d at 1322–23. Take, for example, the first four counts, which allege that the Amuials and Reuben Sastiel were Barmapov's business partners and that they breached their fiduciary duties. The complaint neither quotes nor provides any specific details about the operating agreement for the purported joint venture between Barmapov and these defendants. And its brief explanations of this business arrangement are nonsensical. The complaint states that only one of these four defendants—Sastiel—signed the operating agreement, but it asserts without explanation that the other three still owed fiduciary duties under the

8

agreement. It calls Yossi a "member," a "manager," and an "agent" of the joint venture. It refers to Guy as a "member," a "*de facto* manager," and an "agent and employee." Finally, it states that Avrham is a "member," an "agent," and a "*de facto* principal," in addition to being Barmapov's personal "confidant and business advisor." If Barmapov himself cannot offer a coherent explanation for how the joint venture was structured, we cannot expect the defendants to do it for him by digging through 50 pages and 249 numbered paragraphs of scattershot factual allegations.

Barmapov argues that because the district court never described his second amended complaint as a "shotgun pleading," it did not dismiss his complaint for that reason. But the order the district court entered suggests otherwise. After referring to the first amended complaint as a shotgun pleading, the district court explained that Barmapov, in filing his second amended complaint, had "*yet again* filed a rambling, dizzying array of nearly incomprehensible pleading which *still* fail[ed] to provide a short and plain statement justifying relief." We think the meaning was obvious: the first amended complaint was a shotgun pleading, and so was the second.

The question remains whether the district court abused its discretion by dismissing the second amended complaint with prejudice. Our precedent is clear: "When a litigant files a shotgun pleading, is represented by counsel, and fails to

9

request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds." *Vibe Micro*, 878 F.3d at 1296. Here, Barmapov was represented by counsel, the district court dismissed his first amended complaint after explaining why it was a shotgun pleading, and the court gave him a chance to try again. Barmapov squandered that opportunity by filing another shotgun pleading. Under this circumstance, we have no doubt that the district court did not abuse its discretion.

## IV. CONCLUSION

We **AFFIRM** the district court's decision to dismiss the second amended complaint with prejudice.

TJOFLAT, Circuit Judge, concurring:

While I concur in the judgment of the panel, I write separately to express my views on how lawyers and district courts should proceed when faced with a shotgun pleading. My hope, though perhaps naïve, is that this opinion will serve to guide lawyers in this Circuit through the pleadings stage. If future lawyers follow this guidance, I believe they will be better situated to vindicate the rights of their clients and reduce the workload strain on our already-overborne federal courts.

My opinion proceeds in two parts. To begin, I explain the roles that plaintiff's counsel, district courts, and defense counsel play in paring down unwieldy pleadings, as well as the policies that inform those roles. Then, I briefly discuss Barmapov's Second Amended Complaint, identify a claim that may satisfy Federal Rule of Civil Procedure 12(b)(6), and explain why Barmapov's potentially viable claim must nevertheless be dismissed under our shotgun pleading case law.

I.

A.

The form a complaint takes is, first and foremost, plaintiff's counsel's responsibility. Over 35 years ago, I stated that we require a "pleader to present his claims discretely and succinctly[] so that[] his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts

11

support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not." *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1543 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting). At the time, I was expressly concerned about complaints drafted "to confuse the 'enemy,' and the court." *Id.* Such complaints allow a plaintiff to "mask[]" "theories of relief not provided by law" that could prejudice a defendant's case, *id.*, and it goes without saying that plaintiff's lawyers—many too clever for their own good—continue to file shotgun complaints with those goals in mind.

But courts in this Circuit increasingly run across shotgun complaints that are not drafted for the purpose of hoodwinking the opposing party or the district court. Much of the time, these complaints are just poorly written. For example, complaints that may contain meritorious claims but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" are subject to dismissal under our shotgun pleading case law. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322 (11th Cir. 2015). To an outside observer, disposing of these otherwise viable claims because a plaintiff's lawyer pled *too many* facts[1] may seem like strong medicine, particularly in light of

---

[1] I have a hunch that many plaintiff's lawyers err on the side on overpleading their client's case—either by presenting too many facts or too many claims—out of a fear of being sued for malpractice. These lawyers may be rightly concerned, as the number of legal

12

*Ashcroft v. Iqbal*'s requirement that a complaint include *more* than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). And it is strong medicine, but for good reason.

The federal judiciary is a system of scarce resources, and "[i]t is not the proper function of courts in this Circuit to parse out [] incomprehensible allegations." *Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020). Our district courts have neither the manpower nor the time to sift through a morass of irrelevant facts in order to piece together claims for plaintiff's counsel. *See, e.g.*, *Cramer v. State of Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997) ("Shotgun pleadings, whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchannelled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources."). As the drafters of their pleadings and as officers of the court, lawyers practicing in this Circuit bear a responsibility to preserve the limited resources of the judiciary and present only clear, precise pleadings to the courts. In

---

malpractice claims has recently "soared," and the number of large payouts has increased. *See* Aebra Coe, *Legal Malpractice Claims Have Soared (And May Soar Higher)*, Law360 (May 18, 2020, 5:54 PM), https://www.law360.com/florida/articles/1274652/legal-malpractice-claims-have-soared-and-may-soar-higher-?nl_pk=98d5f295-d2a2-4227-9385-f15da5cda6d7&utm_source=newsletter&utm_medium=email&utm_campaign=florida&read_more=1?copied=1. Of course, this is still no excuse for filing shotgun complaints.

fact, I have—on multiple occasions—expressed my belief that the deliberate use of a shotgun pleading to impede the orderly process of a case is an "abusive litigation tactic[]" that could warrant a citation for criminal contempt. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 982 n.66 (11th Cir. 2008), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1131–32 (11th Cir. 1984)). Though poorly drafted pleadings may not present the same concerns as those drafted for the express purpose of abusing the judicial process, they nevertheless overburden the courts with makework and impede the efficient dispensation of justice.

Further, district courts are flatly forbidden from scouring shotgun complaints to craft a potentially viable claim for a plaintiff. By digging through a complaint in search of a valid claim, the courts "would give the appearance of lawyering for one side of the controversy." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1355 n.6 (11th Cir. 2018). This, in turn, would cast doubt on the impartiality of the judiciary. *Id.* Such a result is plainly inconsistent with the oath to which each judge has sworn. *See* 28 U.S.C. § 453 ("Each justice or judge of the United States shall take the following oath or affirmation before performing the duties of his office: 'I, ___ ___, do solemnly swear (or affirm) that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge and perform all the duties incumbent upon

14

me as ___ under the Constitution and laws of the United States.  So help me God.'").  Lawyers simply cannot delegate the responsibility of making their case to the district courts.

Plaintiff's lawyers practicing in this Circuit would do well to heed some old advice: "'In law it is a good policy never to plead what you need not, lest you oblige yourself to prove what you cannot.'"  *Beckwith v. City of Daytona Beach Shores, Fla.*, 58 F.3d 1554, 1567 (11th Cir. 1995) (quoting Abraham Lincoln, Letter to Usher F. Linder, Feb. 20, 1848, *in The Quotable Lawyer* 241 (D. Shrager & E. Frost eds., 1986)).  I had hoped that, after thirty-five years of shotgun pleading case law, lawyers would be on sufficient notice that muddled, overpled complaints are subject to dismissal, even if they may contain potentially meritorious claims.  But unfortunately, despite my repeated admonitions, I continue to see clients' rights go unvindicated because of poor drafting by their counsel.

## B.

Although plaintiff's counsel is the first line of defense, district courts must also shoulder some responsibility in ensuring that shotgun pleadings are nipped in the bud.  Indeed, we have repeatedly emphasized district courts' "duty to define the issues at the earliest stages of litigation" by ordering the repleading of a shotgun

15

complaint. *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998). On the one hand, we recognize that district courts, "whose time is constrained by the press of other business," are sometimes "unable to squeeze the case down to its essentials." *Id*. But when shotgun complaints are allowed to survive past the pleadings stage, "all is lost—extended and largely aimless discovery will commence, and the trial court will soon be drowned in an uncharted sea of depositions, interrogatories, and affidavits." *Id.* (footnote omitted).

In the long run, the endless onslaught of discovery and the task of—at some point—sifting through the shotgun complaint "is far more time consuming than the work required up front" to dispose of the case. *Id.* So, rather than suffering through never-ending discovery, district courts faced with a shotgun pleading should—pursuant to their inherent authority—*immediately* order a repleader and instruct the party to plead its case in accordance with Federal Rules of Civil Procedure 8(a)(2) and 10(b). *See Fikes v. City of Daphne*, 79 F.3d 1079, 1083 n.6 (11th Cir. 1996).

Shotgun pleadings that ultimately slip past district courts also "wreak havoc on appellate court dockets." *Davis*, 516 F.3d at 982. When a district court fails to squeeze a pleading down and determine whether it complies with Rules 8(a)(2) and 10(b), appellate courts are required to pore over the record and rebuild the case

16

from scratch. This is a herculean undertaking: appellate courts are simply too far removed from the underlying facts to complete the task successfully and efficiently. And, in some instances, a shotgun complaint may be so unintelligible that *even after* a careful, independent review of the record by an appellate court, oral argument will still be necessary to understand the plaintiff's claims, further wasting the time and resources of the appellate courts.

So, while I recognize the intense time pressures district courts often face, it is my hope that they will take the opportunity to confront shotgun pleadings head on at the earliest stages of litigation. *See Johnson Enters.*, 162 F.3d at 1333 (discussing the need for "defin[ing] the issues" of a case "at the earliest stages of litigation.").

C.

Defense counsel serves as a final safeguard against the evils of shotgun pleadings. When faced with a complaint that bears the hallmarks of a shotgun pleading, defense counsel typically has two options. First, they can move the court for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).[2]

---

[2] Federal Rule of Civil Procedure 12(e) states, in relevant part:

A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must . . . point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed

Or second, they can move to dismiss the complaint for failure to state a claim under Rule 12(b)(6).[3]  In the event the motion is defense counsel's first response to the shotgun complaint, the result will likely be the same under either rule.  Under Rule 12(e), the district court will grant defense counsel's motion for a more definite statement and order plaintiff's counsel to redraft the pleading such that it complies with Rules 8(a)(2) and 10(b).  If that order is not obeyed "within 14 days after notice of the order or within the time the court sets, the court may strike the [complaint] or issue any other appropriate order." Fed. R. Civ. P. 12(e).  And for a Rule 12(b)(6) motion, the district court will dismiss the complaint without prejudice on the grounds that the pleading does not comply with Rules 8(a)(2) and 10(b); the court will then give plaintiff's counsel "one chance to remedy" the complaint's defects before dismissing the case with prejudice.  *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

That said, motions under Rules 12(e) and 12(b)(6) are not interchangeable: "[T]he fact that a careful Judge, in the exercise of that wise discretion controlled by the prescribed principles of [Rule 12(e)], might so conclude [that a party cannot be

---

within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

[3] Federal Rule of Civil Procedure 12(b)(6) provides that, in responding to a complaint, a defendant may—prior to answering—move the district court to dismiss the complaint for "failure to state a claim upon which relief can be granted."

reasonably required to frame a responsive pleading] does not permit him to dismiss the complaint for failure to state a claim. It may well be that [plaintiff]'s complaint as now drawn is too vague, but that is no ground for dismissing his action." *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 n.4 (11th Cir. 2014) (quoting *Mitchell v. E–Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959)). There may be times where, in the face of a Rule 12(b)(6) motion, the district court will conclude the appropriate remedy is an order directing the plaintiff to file a more definite statement, not a dismissal without prejudice. *See Jackson*, 898 F.3d at 1358 ("A chance to amend a complaint does not need to come in the form of a dismissal without prejudice or the striking of a portion of the complaint's allegations. It can also be accomplished by ordering the party to file a more definite statement."). So, I caution defense counsel against diving directly into labor-intensive motions to dismiss where a motion for a more definite statement will suffice.

But most importantly, defense counsel should *never* respond to a shotgun pleading in kind. *See Paylor*, 748 F.3d at 1127 ("Rather than availing itself of the protective tools in the Federal Rules of Civil Procedure, Hartford responded to Paylor's shotgun pleading with a shotgun answer: 19 one-line affirmative defenses, none of which refers to a particular count, and none of which indicates that Hartford was even aware of when the retaliation and interference allegedly

19

occurred."). We have expressly condemned the filing of shotgun answers that contain "affirmative defenses that fail[] to respond explicitly to the specific claims plaintiffs [are] independently asserting." *Davis*, 516 F.3d at 984. If, rather than heeding the warning of this Court, defense counsel does choose to respond in kind, then they may be knowingly foregoing (for example) attorney's fees. *See id.* ("Given the manner in which both sides chose to litigate this case in the district court, a strategy that complicated our task to no end, we will deny a request for attorney's fees from either side.").

\*          \*          \*

At bottom, the goals of this Circuit's case law addressing shotgun pleadings hinge on a delicate balance of responsibilities. Plaintiff's and defense counsel each owe a duty to the federal judiciary to streamline litigation as effectively as possible, as early as possible. In turn, district courts bear some responsibility to step in and ensure that shotgun pleadings do not slip through the cracks, lest they make more work for themselves and for the appellate courts. When each party upholds their end of the bargain, the courts of this Circuit can more efficiently vindicate the rights of those who have been harmed.

II.

With these principles in mind, I turn to Barmapov's claims. At the outset, it is worth noting that the District Court was correct: Barmapov's Second Amended Complaint is undoubtedly "a rambling, dizzying array of nearly incomprehensible pleading." But it is not so impenetrable as to prohibit a close look at the claims he has attempted to plead. Indeed, after a careful review of the Second Amended Complaint, I believe Barmapov may have pled some claims that could have survived a Rule 12(b)(6) motion to dismiss.[4]

Consider, for example, Count X of the Second Amended Complaint. There, Barmapov alleges a claim of fraud against Yossi Amuial, one of Avrham Amuial's sons. Under Florida law,[5] Barmapov must establish the following elements to prove a claim of fraud: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation." *Townsend v. Morton*, 36 So. 3d 865, 868

---

[4] As outlined in part I.C, dismissal for failure to state a claim and dismissal on the grounds that a complaint does not satisfy Federal Rules of Civil Procedure 8(a)(2) and 10(b) are different. In this section, I focus on the substance of the allegations of the Second Amended Complaint—which is a Rule 12(b)(6) issue—not the form those allegations took—which are more properly Rule 8(a)(2) and Rule 10(b) issues.

[5] Barmapov's Second Amended Complaint does not explicitly specify which state's laws apply to his claims, but for the purposes of this concurring opinion, I assume Florida law applies.

(Fla. Dist. Ct. App. 2010) (quoting *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985)).

Taking the allegations of his Second Amended Complaint as true—as we must, *see Maggio v. Sipple*, 211 F.3d 1346, 1350 (11th Cir. 2000)—it appears that Barmapov may have pled enough in Count X to survive a Rule 12(b)(6) motion. [6] For the first element, Barmapov alleges that Yossi (among others) made false statements at meetings between January 17 and January 24, 2017, regarding the division of profits from the car dealership and the control Barmapov would have over the dealership. Barmapov claims that these were material misrepresentations because he relied on them when deciding whether to invest in the dealership. For the second element, Barmapov alleges that Yossi knew that the representations he made to Barmapov were false and that he never intended for Barmapov to have any control over the dealership. On the third element, Barmapov repeatedly alleges that Yossi intended to induce him to invest millions of dollars into the

---

[6] I concede that Count X arguably does not meet Federal Rule of Civil Procedure 9(b)'s requirement of specificity for claims of fraud. The District Court found that this Count—among others—was an "impermissible group pleading." I think this is a close call. Not all "lumping" is impermissible under Rule 9(b), and there is arguably sufficient detail in Barmapov's Complaint to give Yossi Amuial and the other Defendants "fair notice" of the claims leveled against them. *See Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1274–75 (11th Cir. 2019). Either way, Rule 9(b) and Rule 12(b)(6) are independent grounds for dismissing a complaint, so for the purposes of this section, I focus exclusively on Rule 12(b)(6).

dealership. And on the fourth element, Barmapov alleges that he in fact invested—and lost—nearly $4,000,000 in the venture as a result of Yossi's representations.

An outside observer may feel as though this is enough: Barmapov has alleged that he was harmed, and he has pled facts sufficient to make out a claim of fraud under Florida law. Admittedly, this perspective has some appeal. Reading the Second Amended Complaint, it does appear that Barmapov was swindled by Yossi Amuial and the other Defendants, and one might sympathize with a man who, relying on the representations others made to him, invested millions of dollars in a scam.

But in light of the policies I outlined in part I, even the potentially viable claims contained in Barmapov's Second Amended Complaint must be dismissed. Faced with a shotgun pleading, the District Court—as we have repeatedly instructed—ordered Barmapov's counsel to amend the First Amended Complaint and to address the identified deficiencies. And, for their part, defense counsel—as we have repeatedly instructed—did not respond to the shotgun pleading in kind and instead moved the District Court to dismiss the Second Amended Complaint under Rule 12(b)(6).

Only Barmapov's counsel failed to uphold their end of the bargain. Rather than rectifying the problems in the First Amended Complaint, Barmapov's counsel

23

filed a meandering Second Amended Complaint filled with irrelevant facts and conclusory allegations. The District Court simply could not be expected to expend its limited resources to wade through hundreds of paragraphs of superfluous material in an effort to dig up a viable claim. In fact, had the Court done so, it would have impermissibly given "the appearance of lawyering" for Barmapov. *Jackson*, 898 F.3d at 1355 n.6.

*          *          *

So, though the panel's conclusion today results in an unfortunate outcome for Mr. Barmapov, it is correct. Critics of this Circuit's shotgun pleading case law may condemn the emphasis we place on form, but as I have explained, the form of pleadings imposes very real costs on courts, lawyers, and the rights of litigants. For over thirty-five years, lawyers practicing in this Circuit have been aware of our stance on shotgun pleadings, and thus I have little sympathy for lawyers who draft slapdash complaints that are ultimately dismissed. Going forward, it is my hope that this opinion will serve as a guide for lawyers who truly seek to vindicate their client's rights—and avoid unfortunate outcomes for their clients—by filing clear, precise pleadings.