[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12392

Non-Argument Calendar

_____

GREGORY JODI JELOUDOV,

Plaintiff-Appellant,

*versus*

WILLIAM D. SNYDER,
Sheriff of Martin County, Florida,
CORY GITLIN,
Deputy,
KEVIN KRYZDA,
Supervisor,
DEPUTY CASTORO,
Individually,
MARTIN COUNTY, FLORIDA,
DANIEL J. BONGINO,

an individual,
et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:21-cv-14248-AMC

_____

Before WILSON, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Gregory Jodi Jeloudov appeals the district court's order dismissing the amended complaint as a shotgun pleading. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Jeloudov sued Martin County Sheriff William Snyder, three of his deputies (Cory Gitlin, Kevin Kryzda, and "Deputy Castoro"), and an individual, Daniel Bongino, for violating Jeloudov's constitutional rights under 42 U.S.C. section 1983 and 18 U.S.C. section 242. The original complaint was forty-two pages and 156 paragraphs and also attached twenty-two pages of exhibits. Jeloudov alleged that the defendants: (1) violated the Fourth and Fourteenth Amendments and the Privileges and Immunities Clause by

discriminating on the basis of transgender status; (2) violated the Americans with Disabilities Act and the Rehabilitation Act by "ignoring" requests for help; (3) intentionally and negligently inflicted emotional distress; (4) committed gender identity and sexual orientation harassment and discrimination, in violation of Florida and federal law; and (5) engaged in a civil conspiracy.

The district court struck the original complaint as a shotgun pleading. It explained that "[f]irst, the factual allegations are replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action such that the [c]ourt cannot determine the factual or legal bases for the claims." Also, the district court wrote that it couldn't "determine what any of the [d]efendants' alleged roles were because the [c]omplaint assert[ed] each [c]ount against all [d]efendants, despite stark differences in alleged wrongs against [p]laintiff." Finally, it pointed out, "[i]n addition to being largely incomprehensible, none of the [c]omplaint's averments describe[d] with any cogency the nature of [p]laintiff's claims, the events from which those claims arose, or the precise cause of action at issue—constitutional, statutory, tort, or otherwise." The district court gave Jeloudov a chance to amend, but it required that the amended complaint be no longer than twenty-five pages and warned that failure to comply would result in dismissal of the case.

Jeloudov filed an amended complaint against Sheriff Snyder, three of his deputies (Kyrzda, Buckley, and Castoro), and Mr. Bongino, and added Martin County and Governor Ron DeSantis as

defendants.  The amended complaint relied on seven alleged incidents:

- On February 3, 2018, a non-defendant—"Detective Allison"—"drunkenly wa[]ved and point[ed] his service-issued weapon" and "threaten[ed]" Jeloudov.  Jeloudov called the "defendants" for help, but the "defendants" ignored the concerns because Deputy Allison was a "good Christian man" who would "never hurt anybody."

- On October 8 and 9, 2018, at Sheriff Snyder's direction, unnamed deputies blocked Jeloudov's driveway, leaving Jeloudov unable to leave home.  The unnamed deputies almost ran over Jeloudov's cats.  When Jeloudov tried to report the unnamed deputies for animal abuse, Sheriff Snyder refused to accept the report.

- On December 18, 2018, Jeloudov tried to use the women's bathroom at a local gym.  Mr. Bongino was there and called Sheriff Snyder to demand that his deputies remove Jeloudov and "prosecute [Jeloudov] for 'damaging the rights of biological women and girls.'"  The deputies arrived "almost immediately" and detained Jeloudov.

- Jeloudov's neighbors complained to the defendants that Jeloudov offended their family values and Christian beliefs.  The neighbors threatened, stalked, and illegally surveilled Jeloudov.  When Jeloudov complained to the sheriff's office, Deputy Buckley took the complaint but refused to identify Jeloudov as a woman on the police report.

- On August 31, 2020, Sheriff Snyder sent out a Twitter post "directed at" Jeloudov and Jeloudov's community, which was an "overt threat" and a "warning" to "those" communities. Sheriff Snyder called himself an "Agent of Light" and "Central Truth of Moral Universe."
- On October 31, 2020, the defendants refused to assist when some "parents with children" told Jeloudov that then-President Trump would be reelected and advised Jeloudov to "go back into the closet." The "[d]efendants" ignored Jeloudov's request to register hate crimes with the Florida Attorney General and the FBI Hate Crime Division.
- On March 31, 2021, a neighbor pointed a firearm and said that Jeloudov deserved to die for opposing America. The defendants told Jeloudov that they would not assist because "[e]veryone knows you're an [a]nti-Christ."

The amended complaint alleged eighteen counts against the defendants:

- Count one alleged that Sheriff Snyder, Deputy Buckley, Deputy Castoro, Deputy Gitlin, Mr. Bongino and Governor DeSantis (but not Martin County) violated the Equal Protection Clause by: ignoring calls for help; not allowing Jeloudov to use the women's bathroom at the fitness club and at the sheriff's office; enforcing the law in favor of Deputy Allison and Jeloudov's neighbors; misgendering Jeloudov; and referring to Jeloudov as a male on the police reports.

- Count two alleged that Sheriff Snyder, Deputy Gitlin, Deputy Castoro, Governor DeSantis, and Mr. Bongino violated the Americans with Disabilities Act and the Rehabilitation Act by ignoring Jeloudov's requests for help.

- Count three alleged that the defendants intentionally inflicted emotional distress by demanding to see Jeloudov's genitalia and referring to Jeloudov as an "anti-Christ."

- Count four alleged that Sheriff Snyder, Deputy Castoro, Martin County, Mr. Bongino, and Governor DeSantis discriminated against Jeloudov on the basis of gender identify and sexual orientation by not training or disciplining the deputies for their actions.

- Count five alleged that Sheriff Snyder, Martin County, Mr. Bongino, and Governor DeSantis engaged in a civil conspiracy by singling out and "demonizing" Jeloudov and Jeloudov's "community."

- Count six alleged that Deputy Castoro falsely imprisoned Jeloudov.

- Count seven alleged that Sheriff Snyder, Martin County, Mr. Bongino, and Governor DeSantis destroyed the reports Jeloudov submitted, in violation of state and federal law.

- Count eight alleged that Sheriff Snyder, Martin County, Mr. Bongino, and Governor DeSantis tampered with witnesses and obstructed justice by destroying the reports and "engaging" the neighbors to intimidate Jeloudov from speaking out.

- Count nine alleged that Sheriff Snyder and Martin County made written and electronic threats on Twitter.
- Count ten alleged that Sheriff Snyder, Martin County, and Governor DeSantis illegally monitored and surveilled Jeloudov.
- Count eleven alleged that Sheriff Snyder, Martin County, Mr. Bongino, and Governor DeSantis stalked Jeloudov.
- Count twelve alleged that Sheriff Snyder, Martin County, Mr. Bongino, and Governor DeSantis failed to report hate crimes against Jeloudov.
- Count thirteen alleged that the defendants failed to intervene and prevent domestic violence against a neighbor.
- Count fourteen alleged that the defendants violated the Americans with Disabilities Act by enforcing the law in favor of Jeloudov's non-disabled neighbors.
- Counts fifteen through eighteen alleged that the defendants violated the Equal Protection Clause by enforcing the law in favor of Jeloudov's non-veteran, non-Jewish, non-LGBTQ+, and non-immigrant neighbors.

The district court dismissed the amended complaint because it "fail[ed] to resolve the issues from the original [c]omplaint and remain[ed] incomprehensible." The amended complaint, the district court explained, "present[ed] conclusory and vague factual allegations, fail[ed] to distinguish between [d]efendants, and shed[] no light on the underlying legal foundation." "The [a]mended [c]omplaint," the district court concluded, "ha[d] not advanced

beyond a shotgun pleading." Because the district court had already warned Jeloudov that his original complaint was a shotgun pleading, it declined to allow another amendment. The district court dismissed Jeloudov's federal claims with prejudice and the state claims without prejudice. Jeloudov timely appealed.

## STANDARD OF REVIEW

We review for an abuse of discretion the district court's dismissal of a complaint as a shotgun pleading. *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021).

## DISCUSSION

Jeloudov first argues that the district court's order was insufficiently detailed to allow for appellate review. But the district court gave a "sufficient explanation[] of [its] ruling[] so as to provide this [c]ourt with an opportunity to engage in meaningful appellate review." *See Danley v. Allen*, 480 F.3d 1090, 1091 (11th Cir. 2007). The district court explained that the amended complaint was a shotgun pleading because it was incomprehensible, contained conclusory and vague factual allegations, did not distinguish between defendants, and shed no light on the underlying legal foundation. And the district court also explained that it had already given Jeloudov a chance to amend and it would not give another. This is enough for us to understand why the district court ruled the way it did and to review its decision.

Jeloudov next argues that the district court erred in dismissing the amended complaint as a shotgun pleading because (1) the

*Weiland* [*v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015)] standard does not apply to litigants who represent themselves and (2) the district court should have waited for the defendants to move to dismiss rather than act on its own.  Jeloudov also contends that the amended complaint wasn't a shotgun pleading because:  (3) it did not incorporate all the allegations into each count; (4) each count specified the defendants it referred to; (5) the defendants admitted in their emails that they could understand the claims; (6) the term "the defendants" didn't deprive the defendants of notice of what conduct they were alleged to have committed; and (7) the amended complaint contained enough details—dates, specific incidents, and specific constitutional provisions—to comply with rule 8.

"A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or [r]ule 10(b), or both."  *Barmapov*, 986 F.3d at 1324.  Rule 8(a)(2) requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  And rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).

We have identified four categories of shotgun pleadings: "complaint[s] containing multiple counts where each count adopts the allegations of all preceding counts"; complaints "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; complaints that do not separate

into a different count each cause of action or claim for relief; and complaints that assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1321–23. "[T]o one degree or another," shotgun pleadings fail to "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* "A district court that receives a shotgun pleading should strike it and instruct [the party] to replead the case—even if the other party does not move the court to strike the pleading." *Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020).

The district court did not err in striking the amended complaint as a shotgun pleading. First, the amended complaint was replete with vague and conclusory allegations. For example, counts seven and eight (destruction of evidence and obstruction of justice), and counts fourteen through eighteen (discrimination on the basis of disability, veteran status, religion, sexual orientation, and nationality), alleged that the defendants treated Jeloudov worse than the neighbors—without any supporting allegations as to who did what and when. Counts ten (illegal surveillance), eleven (stalking), twelve (failure to report a hate crime), and thirteen (failure to intervene) were just as vague and conclusory.

Second, Jeloudov grouped defendants together without clarifying who committed the complained-of acts. Count three (intentional infliction of emotion distress) alleged, for example, that

Sheriff Snyder, Deputy Gitlin, Deputy Castoro, Deputy Buckley, Martin County, Mr. Bongino, and Governor DeSantis compared Jeloudov to the anti-Christ, but its "plain that all of the defendants could not have participated in every act complained of." *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). Counts two (disability and veteran status harassment) and four (gender identity and sexual orientation harassment) had the same problem.

Third, Jeloudov grouped multiple causes of action into the same count. Count one, for example, alleged "Discrimination, Failure to Intervene, Causing Deprivation of Plaintiffs Rights, Privileges, Or Immunities Secured by The Constitution and Laws of The United States in Violation of The First, Fourth and Fourteenth Amendment of The US Constitution and Violation of the Equal Protection Statutes." Jeloudov alleged that: Sheriff Snyder ignored Deputy Allison's threats; "defendants" enforced the law in favor of Deputy Allison and the neighbors; Sheriff Snyder, Deputy Gitlin, Deputy Castoro, Deputy Buckley, Deputy Kryzda and Governor DeSantis covered up for and protected the neighbors; Deputy Gitlin asked if Jeloudov was a "biological male" and said Jeloudov needed to "prove she [was] a woman" and "Jewish" for the police reports; Governor DeSantis told Jeloudov that Deputy Gitlin's actions were "moral"; Governor DeSantis signed legislation excluding Jeloudov from educational, recreational, and sport activities; and Sheriff Snyder misgendered Jeloudov. Jeloudov violated the fourth category of shotgun pleadings by stuffing multiple claims against multiple defendants into a single count.

None of Jeloudov's counterarguments are persuasive.  First, while Jeloudov is correct that *Weiland* dealt with a counseled complaint, "this circuit's shotgun-pleading rule applies to everyone," even though "we ordinarily give pro se litigants more leeway when it comes to drafting." *Pinson v. JPMorgan Chase Bank, N.A.*, 942 F.3d 1200, 1208 (11th Cir. 2019).

Second, contrary to Jeloudov's claim, the district court acted properly in striking the amended complaint on its own motion.  This is because rules 8 and 10 are, in part, "written for the benefit of the court, which must be able to determine which facts support which claims, whether the plaintiff has stated any claims upon which relief can be granted, and whether evidence introduced at trial is relevant." *Barmapov*, 986 F.3d at 1324.

Third, while Jeloudov is correct that the amended complaint did not incorporate earlier counts into later ones and specified which counts were directed at which defendants, it was still a shotgun pleading under the other *Weiland* categories.

Fourth, Jeloudov argues that using the term "defendants" didn't deprive the defendants of notice of what conduct they were alleged to have committed.  But a complaint is a "quintessential 'shotgun' pleading" where, just like here, it "is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction between the [seven] defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of." *Magluta*, 256 F.3d at 1284.

Fifth, Jeloudov argues that the district court violated rule 52(a)(6). Rule 52(a)(6) allows appellate courts to set aside a lower court's "findings of fact" only if they are clearly erroneous. Fed. R. Civ. P. 52(a)(6). But the clearly erroneous standard is not applicable here because the district court did not make any findings of fact; it concluded as a matter of law that the amended complaint was a shotgun pleading.

Sixth, Jeloudov argues that the district court erred in not allowing discovery. But, because the district court made a legal determination as to the sufficiency of Jeloudov's amended complaint, no discovery was necessary. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("Facial challenges to the legal sufficiency of a claim . . . always presents a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true. Therefore, neither the parties nor the court have any need for discovery before the court rules on the motion.").

Finally, Jeloudov contends that the district court should have given leave to amend. It is true that, "[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018). But Jeloudov already had one chance to amend the complaint. The district court was not required to give a third chance to comply with rule 8. *Id.*

14                    Opinion of the Court                    21-12392

In short, the district court didn't abuse its discretion in dismissing Jeloudov's amended complaint as a shotgun pleading.

**AFFIRMED.**