[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 23-14147

Non-Argument Calendar

————————————

ELENA DVOINIK,
BORIS ZAVADOVSKY,

                                        Plaintiffs-Appellants,

*versus*

ELKE U. ROLFF,
DALE F. WEBNER,

                                        Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 1:23-cv-22289-JEM

_____

Before ROSENBAUM, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants Elena Dvoinik and Boris Zavadovsky, *pro se*, appeal the dismissal of their complaint against Defendants-Appellees Elke Rolff and Dale Webner—without prejudice and without leave to amend—as an impermissible shotgun pleading. Plaintiffs argue that the district court procedurally erred in dismissing their complaint for three reasons: (1) the district court dismissed the complaint before discovery, and Plaintiffs assert that they needed discovery to compel the production of evidence and demonstrate the plausibility of their claims; (2) Plaintiffs contend they were entitled to entry of default; and (3) Plaintiffs urge that, in any case, their claims were sufficiently plausible to survive a motion to dismiss.

## I.   Background

Plaintiffs filed a pro se complaint against Defendants, seeking civil remedies under 18 U.S.C. § 1964 pursuant to the Racketeer Influence and Corrupt Organizations ("RICO") Act, *id.*, §§ 1961 68. Because this is an appeal from the granting of a motion to dismiss, we assume the allegations in the complaint to be true and recite them in the light most favorable to Plaintiffs. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The actual facts may or may not be as set forth here. *Id.*

This case stems from an alleged wrongful search and seizure of materials from Plaintiffs' Austrian home. Following this incident, Plaintiffs sued the Austrian government and various Austrian citizens in U.S. federal court. Defendants Rolff and Webner represented the defendants in these cases.

Plaintiffs allege that Defendants were involved in a RICO enterprise in service of several "high ranking members of the Austrian Government." The purported "main purposes" of the RICO enterprise were to launder money "stolen from [the] Austrian budget and received as a result of corruption and other criminal activities" and to manage and finance "Austrian foreign agents' unlawful activities [in] the U.S." The complaint alleged that the money was laundered "through a network of bogus [law] firms and shell corporations" and masked as payments for bitcoin, electronic art, and professional services.

Rolff allegedly operated one of these "bogus law firm[s]," and she received money "stolen from the Austrian budget" to attempt to induce Plaintiffs to withdraw their claims. The Austrian Ministry of Foreign Affairs website listed Rolff as one of five "Trusted lawyers" exclusively recommended to Austrians facing legal matters in the United States. But according to the complaint, Rolff was not registered with the Attorney General under the Foreign Agent Registration Act ("FARA"), 22 U.S.C. § 611 621. And despite being licensed in Florida, Rolff had "not provide[d] any legal services anywhere in the United Stat[e]s" and had a law firm that was registered to "a one bedroom one family house in Miami

Beach" with no employees.  The complaint also asserts that Rolff used bank accounts to launder the RICO enterprise's illicit funds by accepting payments for fictitious legal services.

Rolff hired Webner and instructed "him to intimidate the Plaintiffs and to intervene in all related lawsuits, serving the interests [of the] RICO Enterpri[s]e." Webner allegedly intimidated Plaintiffs by threatening reprisal from the Austrian government if they did not withdraw their civil claims in these related cases.

Defendants also ignored Plaintiffs' requests to obtain certain tax and medical documents that Austrian authorities had seized, causing Plaintiffs to be assessed tax penalties in Germany.  And they refused to produce to Plaintiffs any written power of attorney or other document reflecting their legal status on behalf of Austrian persons or entities.

Based on these allegations, Plaintiffs claimed that Rolff and Webner had participated in the RICO enterprise by committing the predicate acts of (1) money laundering, for accepting the proceeds of unlawful FARA activity with the intent to carry on such activity; and (2) witness tampering, for using intimidation and threats against Plaintiffs to induce them to drop their claims.

This is the second claim Plaintiffs have filed against Defendants.  The first, which contained similar allegations under FARA, was dismissed with prejudice. *See Dvoinik v. Rolff*, No. 8:23-CV-0623-KKM-CPT, 2023 WL 3276398, at *2 (M.D. Fla. May 5, 2023).  And Plaintiffs appealed another related case after a dismissal, but

23-14147            Opinion of the Court            5

we affirmed that disposition. *See Dvoinik v. Philipp*, No. 23-12240, 2024 WL 95440, at *7 (11th Cir. Jan. 9, 2024).

## II.  Procedural History

Plaintiffs filed their initial complaint, and Defendants timely moved to dismiss the complaint for failure to state a claim and as a shotgun pleading. While the motion to dismiss was pending, the court entered a scheduling order, which ordered the parties to jointly file a conferral report.

Several weeks later, Plaintiffs moved for a clerk's entry of default against Defendants. That same day, the Clerk of Court issued a non-entry of default because Defendants' motion to dismiss was pending at the time.

About two more weeks passed, and the district court granted the motion to dismiss the complaint as a shotgun pleading that failed to give Defendants fair notice of the claims against them. The district court characterized the complaint as "riddled" with "rambling, confusing language" and "conclusory allegations that lack[ed] factual detail." In particular, the court stated, the complaint failed to provide any detail as to what the alleged RICO scheme was, Defendants' role in the scheme, or how Defendants "intimidate[d]" or "deceived" Plaintiffs, and instead simply parroted statutory language. The court dismissed the complaint without prejudice and without leave to amend. Plaintiffs appeal.

### III.    Standards of Review

We review a district court's determination on a motion for entry of default for an abuse of discretion.  *See Robinson v. United States*, 734 F.2d 735, 739 (11th Cir. 1984).  We likewise review discovery and case-management matters for an abuse of discretion. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366–67 (11th Cir. 1997).  "When employing an abuse of discretion standard, we must affirm unless we at least determine that the district court has made a clear error of judgment, or has applied an incorrect legal standard."  *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 996-97 (11th Cir. 2004) (quotation marks omitted).  Finally, we also review a district court's dismissal of a complaint as a shotgun pleading for abuse of discretion.  *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021).

### IV.    Discussion

We start with Plaintiffs' arguments that the district court procedurally erred by failing to (1) enter default against Defendants and (2) permit discovery before granting the motion to dismiss.

Rule 55(a) requires the clerk of court to enter a default against a party who "has failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  In general, defendants must file either a responsive pleading or a motion to dismiss within 21 days of service.  *See* Fed. R. Civ. P. 12(a)(1)(A), (b).  If a defendant moves to dismiss, the defendant generally need not file a responsive pleading until 14 days after the court denies the motion or postpones its disposition until trial.  Fed. R. Civ. P. 12(a)(4)(A).

Here, Plaintiffs were not entitled to entry of default. After service of the complaint in mid-July 2023, Defendants timely filed a motion to dismiss under Rule 12(b)(6). That preempted the necessity of filing an answer until the motion was decided. *See* Fed. R. Civ. P. 12(a)(4)(a); *see also Brown v. Crawford County*, 960 F.2d 1002, 1010 (11th Cir. 1992).

Plaintiffs contend that Defendants were required to file an answer before the court ruled on the motion to dismiss because the court issued its scheduling order before that time, and scheduling order instructed the parties to jointly file a conferral report. But nothing in the district court's scheduling order resolved or postponed resolution of the motion to dismiss. Nor did it the scheduling order otherwise require Defendants file a responsive pleading. Because Defendants timely filed their motion to dismiss and it was still pending when Plaintiffs filed for default, Plaintiffs were not entitled to an entry of default. In short, Defendants had not defaulted.

Nor have Plaintiffs shown that the district court abused its discretion by ruling on the motion to dismiss before discovery. "Civil pleadings are supposed to mark the boundaries for discovery; discovery is not supposed to substitute for definite pleading." *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1127 (11th Cir. 2014) (noting that it is "backward" to expect that "parties wait until discovery to identify, with precision, the subject of the litigation"). Indeed, we've explained that "[f]acial challenges to the legal

sufficiency of a claim . . . should . . . be resolved before discovery begins." *Chudasama*, 123 F.3d at 1367.

And here, Defendants made a facial challenge to the legal sufficiency of Plaintiffs' claims—namely, that Plaintiffs made their claims in a shotgun pleading. So the district court did not abuse its discretion in resolving that facial challenge before discovery began.

Next, we consider whether the district court abused its discretion in ruling that the complaint here was a shotgun pleading. We conclude that it did not.

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). And to the extent that "doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." *Id.* These pleading practices ensure, among other things, that a pleader presents her claims discretely and succinctly to allow her adversary to understand what she is claiming and frame a responsive pleading. *Barmapov*, 986 F.3d at 1324.

We've explained that "[a] shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both." *Chudasama*, 123 F.3d at 1367. "Shotgun pleadings are flatly forbidden by the spirit, if not the letter, of these rules because they are calculated to confuse the enemy, and the court." *Id.*

For these reasons, "[w]e have little tolerance" for shotgun pleadings. *Id.* We've explained that they "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Id.* (quotation marks omitted).

We've identified "four rough types or categories of shotgun pleadings." *Id.* at 1323. These include complaints that (1) "contain multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint," (2) are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," (3) do not separate each cause of action or claim for relief into separate counts, or (4) assert multiple claims against multiple defendants without specifying which defendant is responsible for which acts or omissions. *Id.* at 1324–25 (quotation marks omitted).

It is not the district court's job to parse out incomprehensible allegations from shotgun pleadings. *Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020). Rather, a district court can dismiss a complaint on shotgun-pleading grounds under its "inherent authority to control its docket and ensure the prompt resolution of lawsuits." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (quotation marks omitted). While we give *pro se* litigants more leeway than counseled litigants, they must still follow shotgun-pleading rules and provide the defendants with adequate notice of the claims against them and the grounds on which

the claims rest. *Pinson v. JPMorgan Chase Bank, N.A.*, 942 F.3d 1200, 1208 (11th Cir. 2019); *see Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (*Pro se* litigants are "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure.").

In addition, although we liberally construe *pro se* filings, "issues not briefed on appeal by a *pro se* litigant are deemed abandoned." *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (citation omitted). "We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). An appellant "fails to adequately brief a claim when he does not plainly and prominently raise it. *Id.* at 682 (quotation marks omitted). Abandonment can also occur when arguments are buried within other arguments, or when a brief makes only passing references to it in the statement of the case or summary of the argument. *Id.* at 681–82.

Here, Plaintiffs abandoned any challenge to the court's dispositive finding that their complaint was a shotgun pleading. In their briefing, Plaintiffs assert in passing that they complied with Rule 8, they maintain that their claims were sufficiently plausible to survive a motion to dismiss, and they cite evidence docketed in this case and related cases. But they fail to engage with any of the court's reasons for deeming their complaint a shotgun pleading, or with our caselaw on shotgun pleadings. Because Plaintiffs have

abandoned any challenge to that dispositive ruling, "it follows that the judgment is due to be affirmed." *Id.* at 680.

But in any event, the district court did not err in dismissing Plaintiffs' complaint as an impermissible shotgun pleading. The complaint falls into the first two categories of shotgun pleadings we have identified. *See Barmapov*, 986 F.3d at 1324–25. It contains multiple counts where all but one of the counts adopted the allegations of the preceding counts, "causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1325 (quotation marks omitted).

The complaint also constitutes a shotgun pleading because it is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," leaving Defendants to guess as to the claims against them and the grounds supporting those claims. *See Barmapov*, 986 F.3d at 1325. The complaint alleges that Defendants committed predicate money laundering acts for the RICO enterprise by accepting money from the Austrian government in exchange for providing "legal services" as unregistered foreign agents under FARA. But as the district court noted, the complaint fails to provide any supporting details of the alleged RICO enterprise or Defendants' connection to it, apart from being paid for the provision of legal services to Austrian citizens, Austrian government officials, and the Austrian government in connection with Plaintiffs' related civil cases.

Despite making vague accusations about Defendants' legitimacy, and providing irrelevant details about their law firms, the

complaint gives no reason to believe Defendants were not authorized to, or did not in fact provide, such legal services in defense of the related cases. And FARA exempts from registration persons engaged in the legal representation of a disclosed principal. *See* 22 U.S.C. § 613(g).

Plus, Plaintiffs do not indicate how any alleged failure to register with the Attorney General under FARA harmed them. Rather, Plaintiffs' alleged harm appears to stem from Austria's failure to return important personal records, which caused German tax authorities to place a lien on Zavadovsky's pension, Plaintiffs' main source of income. But the complaint does not indicate how Defendants, even if they promised to convey Plaintiffs' request to the proper Austrian authorities, were at fault for the failure to return those records.

As for the complaint's broad accusations that Defendants engaged in witness tampering, *see* 18 U.S.C. § 1512(b)(1)(2), the allegations fail to provide any factual support for the complaint's assertions that Defendants "misled," "deceived," or "intimidated" Plaintiffs in any meaningful way. For instance, the complaint makes vague references to emails or other communications between the parties but fails to explain the contents of those communications or how they are relevant to any particular claim. It also asserts that Webner accused Plaintiffs of being scammers and pressured them to drop their lawsuits. But the only suggestion of a threat in the complaint is extremely vague.

23-14147                Opinion of the Court                13

In sum, the district court did not err in dismissing the complaint as a shotgun pleading.

Finally, regarding Defendants' additional request to modify the decision of the lower court from a dismissal 'without prejudice' to a dismissal 'with prejudice,' we must decline to do so.[1] Defendants have not filed a cross-appeal, so they "may not attack the decree with the view to enlarge [their] own rights or . . . of lessening the rights of [their] adversar[ies]." *Jennings v. Stephens*, 574 U.S. 271, 276 (2015). In any case, given that the district court dismissed solely on the basis that the complaint was a shotgun pleading, it could not have dismissed the complaint with prejudice under our precedent. Indeed, our precedent ordinarily requires a chance at amendment before a court may dismiss with prejudice on shotgun-pleading grounds. *See Vibe Micro*, 878 F.3d at 1296.

In sum, for these reasons, we conclude that the district court did not abuse its discretion in dismissing the complaint as a shotgun pleading, denying default judgment, and dismissing the complaint before discovery. Nor did it abuse its discretion in not dismissing the matter with prejudice.

**AFFIRMED.**

---

[1] Plaintiffs have not appealed the dismissal without at least one opportunity for amendment, and the dismissal without prejudice allowed Plaintiffs to refile their complaint, so we do not opine on the propriety of the district court's failure to provide Plaintiffs with at least one opportunity to amend their complaint before dismissing it.